### DANIEL L. CLARK *vs.* THE NEW ENGLAND MUTUAL FIRE INSURANCE COMPANY.

The act of incorporation and by-laws of a mutual fire insurance company having provided, that in case of loss, the assured should within thirty days thereafter give notice thereof in writing, at the office of the company, in a certain manner and with certain particulars specified in the by-laws ; and notice of a loss having been given to the company by their agent, within the time limited, but not in the manner and with the particulars required, upon which the president of the company made an examination of the premises, and declined to pay the loss, without objecting to the form of the notice ; it was held, that this was a waiver of the right of the company to any further or different notice.

The alienation of one of several estates, separately insured by the same policy, in which it is provided, that when any property insured shall be alienated, the policy shall become void, only avoids the policy as to the estate so alienated.

The charter of a mutual insurance company having provided, that if any other insurance should be obtained on any property insured by the company, without notice to the secretary and the consent of the directors, the policy issued by the company should be void ; it was held, that this provision was not infringed by a further insurance which was void for misrepresentation on the part of the insured.

A levy of an execution on real estate, so long as a right of redemption remains in the debtor, is not such an alienation thereof, as will avoid a policy of insurance, one of the stipulations of which is, that the policy shall become void by an alienation of the property insured, in any way.

THIS, was an action of assumpsit, tried before *Fletcher*, J., in this court, against the defendants, a corporation established by the laws of New Hampshire, and doing business at Concord in that state, on a policy of insurance executed by them, dated on the 18th of May, 1848, and numbered 1094, for $2200, on the plaintiff's " Tavern House" in Fairhaven.   The policy also included an insurance for $300 on the plaintiff's shop, which had been alienated by him, before the commencement of this action, and for the loss of which he made no claim.   It was agreed, that this shop, after the alienation, was occupied by the purchaser as a dwelling-house, without notice to the defendants.   The buildings insured were entirely destroyed by fire on the morning of the 31st of December, 1848.

The plaintiff's application for insurance, upon which the policy was issued, provided, that in case of insurance, he should be bound by the act of incorporation and by-laws of the company.

The act of incorporation contained the following provisions.

Sect. 7. That when any person shall sustain any loss by fire, of buildings or other property insured by said company, he shall, within thirty days after such loss, give notice thereof in writing, at the office of said company; and the directors, upon a view of the same, or in such other manner as they may deem proper, shall ascertain and determine the amount of said loss or damage.

Sect. 8. That the directors shall settle and pay all losses within three months after notice shall have been given as aforesaid, unless they shall judge proper, within that time, to rebuild, repair, or replace the property destroyed.

Sect. 12. That all applicants for insurance shall give notice to the secretary, of any existing policy on the property to be insured; and if any other insurance shall be obtained on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained; otherwise, the policy issued by this company shall be void.

Sect. 13. That when any property insured by this company shall in any way be alienated, the policy shall. thereupon be void, and should be surrendered to the directors, to be cancelled.

The eleventh article of the by-laws required, that all persons insured by the defendants, and sustaining loss or damage by fire, should forthwith give notice thereof, as required by the act of incorporation, and, also, as soon thereafter as practicable, should furnish the office with a particular account of such loss or damage, signed and verified by their oath or affirmation, as provided in the article. The same article also declared, that " when, in conformity to the charter, a double insurance exists, the company.is only liable to a ratable proportion of any loss which may be sustained."

It appeared, by the testimony of George F. Barnard, the defendants' agent at New Bedford, that he knew of the destruction of the plaintiff's building; that soon after the fire, the plaintiff called on him and that the witness told him, either that he had communicated the loss, or would make it known, to the defendants; and being applied to by the plaintiff's agent, told him that he had written a letter to the defendants' office, communicating the loss.

The letter referred to, of which the following is an extract. was dated on the 1st of January, 1849 : —

"We had a fire yesterday morning by which property insured by policy 1094 was totally destroyed; also property insured by policy 3838, was thrown into confusion and damaged by being wet and removed; 3838 is in such a state that immediate action would be desirable; please direct what shall be done, unless some of the directors should think best to come and see for themselves, which course would be satisfactory to me."

The agent testified further, that about a week after this letter was sent, the defendants' president came to Fairhaven and New Bedford; that the witness saw him after he had been, as he said, to the ruins; and that they had a conversation respecting the loss, which the president declined paying altogether.

The witness was at the same time the agent of the Bowditch mutual fire insurance company, a corporation established by the laws of this commonwealth, and doing business at Salem; from which company, through the agency of the witness, the plaintiff obtained further insurance on the same building insured by the defendants, by a policy dated on the 25th of August, 1848. In the application for this policy, the sixteenth interrogatory was as follows: " State whether or not incumbered, and to what amount." To this, the plaintiff answered: " None." But, it was agreed, that the plaintiff, before making application for such additional insurance, had mortgaged the premises to secure the payment of about $400, which mortgage was outstanding at the time of the loss.

It was also agreed, that previous to the loss, the premises had been set off on an execution against the plaintiff; that the judgment creditor had not taken possession, though legal seizin had been received by his attorney; and that the plaintiff's right to redeem the premises was in full force at the time of the commencement of this action.

The defendants objected: — 1st. That the plaintiff had not given notice of the loss, in the manner and within the time required by the defendants' by-laws. 2d. That the shop insured in the same policy had been alienated by the plaintiff. 3d. That the plaintiff, subsequent to the date of his policy, had obtained additional insurance upon the same property by the Bowditch mutual fire insurance company, without such notice to the defendants, as is required by the twelfth section

of their act of incorporation. 4th. That the levy of an execution upon the insured premises was an alienation which avoided the policy.

The court were to draw such inferences from the facts above stated, which were reported by the presiding judge for the consideration of the whole court, as a jury would be authorized to draw therefrom, and to order a nonsuit, default, or new trial, as they should think proper.

*J. H. Clifford*, for the plaintiff.

*T. G. Coffin* and *C. B. Farnsworth*, for the defendants.

Fletcher, J.   The first objection made by the defendants to the plaintiff's right to recover is, that the plaintiff did not give notice of the loss, in the manner and within the time required by the by-laws of the company.   The defendants were in fact notified of the loss, on the day after the fire, and in the manner stated in the report.   Almost a week after this notice, the president of the defendants came to Fairhaven and New Bedford, and went to the ruins.   The object of this visit of the president no doubt was, to make himself fully acquainted with all the facts and circumstances of the case.   After the president had thus been to the ruins, it would seem, as the case finds, that the defendants declined to pay the loss altogether.   The president, without doubt, obtained all the information which he desired; and any further notice, therefore, to the defendants, would have been wholly unimportant and useless to them.   The refusal to pay the loss was not put on the ground of any defect or insufficiency in the notice.   No objection was taken at that time to the form of the notice; no further or more particular information was requested; but the defendants declined to pay the loss altogether; and that within the thirty days after the loss, and of course before the expiration of the time allowed to the plaintiff to give the notice.

This conduct, on the part of the defendants, upon any sound and just principle of fair dealing, must be regarded as a waiver of any further or different notice.   This position is directly and fully sustained by the cases of *Heath* v. *Franklin Ins. Co.*, 1 Cush. 257 ; *Vos* v. *Robinson*, 9 Johns. 192 ; *McMasters* v. *Westchester County Mut. Ins. Co.*, 25 Wend. 379 ; *Ætna Fire*

*Ins. Co.* v. *Tyler,* 16 Wend. 385, 401. The principle of waiver is a recognized and well-settled principle, and applies with much force to the present case.*

The next ground taken by the defendants is, that the shop which was insured in the same policy had been alienated by the plaintiff, and that this is such an alienation as will avoid the policy. But the shop was valued separately, and was insured separately, as a separate, distinct, independent subject of insurance, though insured in the same policy. The alienation of the shop would no doubt avoid the policy *pro tanto,* and only *pro tanto.* The tavern house and the shop being insured separately, the alienation of one would no more affect the insurance on the other, than if they had been insured in separate policies.

The section of the act of incorporation, upon which the defendants rely in support of this point, is the 13th, and reads thus : — " That when any property insured by the company shall in any way be alienated, the policy thereupon shall be void." The policy shall be void as to the property thus alienated, but not as to other property separately insured and not alienated. The case of *Smith* v. *Saratoga County M. F. Ins. Co.,* 1 Hill, 497, referred to by defendants' counsel, has no bearing upon the case under consideration.

The next ground of defence taken by the defendants is, that the plaintiff, subsequent to the date of his policy, upon which this action is founded, obtained insurance upon the property by the Bowditch mutual fire insurance company, without such notice to the defendants as is required by the terms of the insurance.

By the twelfth section of the defendants' act of incorporation, it is thus enacted : — " And if any other insurance shall be obtained on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained ; otherwise the policy issued by this company shall be void."

By the eleventh article of the defendants' by-laws, it is pro-

---

* See also the case of *Underhill* v. *Agawam Mut. F. Ins. Co.,* post, 440

vided, that " when in conformity to the charter, a double in-surance exists, the company is only liable to a ratable propor-tion of any loss which may be sustained."

After the making of the policy declared on in this suit, the plaintiff mortgaged the premises insured to secure the pay-ment of about $400, and this mortgage was outstanding at the time of the loss.    While the estate was thus incumbered, by the mortgage, and after the making of the policy in suit, the plaintiff applied to the Bowditch company for an in-surance on the same premises, and in his printed application the following interrogatory is clearly and expressly put to the plaintiff, to wit: " State whether or not incumbered and to what amount," to which the written answer of the plaintiff is, " None."    Upon the application of the plaintiff, containing this inquiry and this answer, the policy of the Bowditch com-pany was issued, which the defendants now set up as a de-fence to this suit; alleging that the policy of the Bowditch company thus issued made void the defendants' policy pre-viously issued, and upon which this suit is founded.

The defendants insist, that the issuing of this policy to the plaintiff by the Bowditch company comes within the provi-sion of the twelfth section of the defendants' act of incorpora-tion, which is made a part of this policy, to wit: " And if any other insurance shall be obtained on any property insured by this company, notice shall be given to the secretary, and the consent of the directors obtained; otherwise the policy issued by this company shall be void "; and that the issuing of the policy by the Bowditch company, without notice given by the plaintiff to the defendants, rendered the defendants' policy void.

But the question is, was " any other insurance obtained," within the just and true import of the section of the act before recited ?    The policy was issued by the Bowditch company upon an application by the plaintiff, in which it was distinctly and expressly stated, that there was no incumbrance upon the premises insured, when in fact there was a mortgage thereon for about $400.    The existence of this mortgage was certainly a material and important fact, not only in regard to the lien of the insurers upon the property, but also as to the ability

and responsibility of the insured, and as to his interest and estate in the premises, and in other respects. But when the insurers deem a fact material and make an express and direct inquiry as to that fact, it is certainly material that the insured should answer such inquiry truly. It is perfectly clear, therefore, that the policy of the Bowditch company was issued upon a material misrepresentation of the insured in his application. It is manifest, therefore, that this policy is not binding upon the Bowditch company, and that the plaintiff could maintain *no action* upon it against that company. It is an invalid and useless policy. The contract between these parties was, that if the plaintiff obtained other insurance, without giving the defendants notice, the policy made by the defendants should be void.

The defendants now say, that their policy is void, because the plaintiff obtained other insurance without giving them notice. But it does not appear, in point of fact, that the plaintiff did obtain other insurance. If the plaintiff had notified the defendants, that he had obtained other insurance, this would manifestly not have been according to the fact. The plaintiff, to be sure, had obtained a policy, but it was not binding in law and could not be enforced.

This appears clearly and distinctly in the case. The transaction with the Bowditch company was not insurance in any just and proper import of the term, as used by these parties, and understood by them. It was not insurance, as manifestly understood by the defendants themselves, when they made their policy. By the eleventh article of the by-laws of the defendants, which are annexed to and make a part of the policy, it is provided, that " when, in conformity to the charter, a double insurance exists, the company is only liable to a ratable proportion of any loss which may be sustained." The provision of the charter referred to in this clause is no doubt the twelfth clause hereinbefore recited. The by-law, therefore, considers the other insurance, which may be obtained according to the twelfth section of the charter, as a double insurance ; and when such insurance is obtained, then the defendants are to pay only their ratable proportion of any loss, leaving the insured

to obtain the residue of the loss from the other insurers. But the insured could not obtain such residue of the other insurers, unless he had obtained other insurance which was valid and binding in law, and which could be legally enforced against the other insurers. It is evident, therefore, that the parties to the policy now in suit understood, that the defendants themselves understood and intended, and such is the fair import of the terms, that the other insurance referred to in the twelfth section of the charter was a binding available insurance; one upon which the insured could rely for protection in case of loss, and which he could enforce by law.

The defendants were to pay only their ratable proportion of any loss, when the assured obtained other insurance according to the charter; thus clearly and manifestly assuming, that such other insurance was to be a legal, binding insurance, upon which the assured could receive the portion of his loss which was not paid by the defendants. As the defendants, in case of other insurance were to pay only their ratable proportion of any loss, it was important, that they should be made acquainted with the existence of such other insurance; and the insured was therefore required to give notice, and obtain the consent of the directors, and upon failure to do so, the defendants' policy was to be void. But the insurance, which was to destroy the defendants' insurance, was to be an available insurance, not a policy merely which was not binding in law, and was really and in fact no insurance.

A deed obtained by fraud is in legal intendment no deed at all, and a party may plead *non est factum.* It is immaterial, in regard to misrepresentation in obtaining insurance, whether it is made fraudulently or by mistake or accident; the effect is the same. A policy obtained by misrepresentation is in legal intendment no insurance at all; it has no legal effect. The policy of the defendants could not be avoided by obtaining another policy merely, but which was not an insurance in the proper sense of the term.

This same point has been before settled by this court in the case of *Jackson* v. *Massachusetts Mutual Fire Ins. Co.*, 23 Pick. 418, 423. In that case, the court say : " An insurance that

shall operate to avoid the policy of the defendants, as a viola-
tion of the 10th article of their rules, must be a valid and legal
policy, and effectual and binding upon the assurers. Assuming
the second policy to have been made for the direct benefit of
the plaintiff, it was wholly nugatory and of no effect; and
,annot for this reason be now set up, to defeat the policy
made by the defendants."

The same point has been decided in the same way by the
supreme court of Pennsylvania, in the case of *Stacey* v.
*Franklin Fire Ins. Co.*, 2 W. & S., 506, 544, 545. The court
say : " The defendants' defence rests on this, that the plain-
tiffs are doubly insured, but if the plaintiffs could at no time
have recourse to the North American Insurance company, it
cannot with any propriety be said that they were doubly insured.
If the plaintiffs have failed to perfect their contract with the
subsequent underwriters, by omitting to have the prior insur
ance allowed of and specified on the policy as is required, it is
difficult to imagine in what way the prior insurance can be
invalidated or affected. It is a vain, nugatory, void act. An
assurance to avoid the policy must be a valid and legal policy,
and effectual and binding upon the assurers." " It must be
remembered, that to defeat the action against the first under-
writer, the defendant must give the plaintiff a right of action
against the subsequent insurer. He must in effect show a
double insurance, which it cannot be, unless it gives the plain-
tiff a right of action for a proportion of his indemnity."

A different view of this subject was taken by the supreme
court of the United States, in the case of *Carpenter* v. *Providence
Washington Ins. Co.*, 16 Peters, 495, decided in 1842. In the
policy upon which that case was founded, there was the follow-
ing clause : — " And provided further, that in case the insured
shall have already another insurance on the property hereby in-
sured not notified to this corporation, and mentioned in or in-
dorsed upon this policy, then this insurance shall be void and of
no effect." The defendants alleged, that at the time they made
the policy in suit, there was an existing policy on the premises
made by the American Insurance company, of which the de-
fendants were not notified, as they should have been, and that

for this reason the policy of the defendants was void. At the trial before the jury, the counsel for the plaintiffs requested the judge to instruct the jury, " That if, in point of fact, the policy of the American insurance company was procured by a material misrepresentation, by the owners, of the cost and value of the premises insured, it was to be deemed utterly null and void, and therefore as a null and void policy notice thereof need not have been given to the Washington insurance company at the time of underwriting the policy declared on." The judge refused to give the instruction prayed for, but on the contrary instructed the jury, that if the policy of the American insurance company was, at the time when that at the Washington insurance office was made, treated by all the parties thereto as a subsisting and valid policy, and had never in fact been avoided, but was still held by the assured as valid ; then that notice thereof ought to have been given to the Washington insurance company, and if it was not. the policy declared on was void.

In giving the opinion of the court upon this instruction, (16 Pet. 509,) Mr. Justice Story says : — " We are of opinion, that the instruction, as asked, was properly refused, and that given was correct. It is not true, that because a policy is procured by misrepresentation of material facts, it is therefore to be treated, in the sense of the law, as utterly void *ab initio.* It is merely voidable, and may be avoided by the underwriters upon due proof of the facts, but until so avoided, it must be treated for all practical purposes as a subsisting policy. In this very case, the policy has never to this very day been avoided or surrendered to the company." This decision therefore rests on the ground, that the policy of the American insurance company, though taken to have been obtained by material misrepresentation, was not void, but merely voidable.

In 1 Story, R. 57, there is a report of a case decided in 1839, brought by the same plaintiff against the American insurance company founded on the same policy made by them. The following are extracts from this report : — " Story, J., delivered the opinion of the court as follows : We are clearly of opi-

Clark *v.* New England Mutual Fire Insurance Company.

nion that the policy in this case, having been obtained upon a misrepresentation of material facts, is *utterly void.* The mis-representation, made by an agent in procuring a policy, is equally fatal, whether made with the knowledge or consent of the principal or not.   The ground in each case is the same. The underwriters are deceived.   They execute the policy on the faith of statements, material to the risk, which turn out to be untrue.   The mistake is therefore fatal to the policy, as it goes to the very essence of the contract."

Upon the delivery of this opinion, the plaintiff discontinued his suit.   In this case, therefore, the policy made by the American insurance company is pronounced to be *utterly void,* because the *mistake goes to the very essence of the contract,* while in the suit against the Washington insurance company, this same policy of the American insurance company was held not to be void, but merely voidable.   Here would cer-tainly seem to be a pretty direct conflict of opinion.   In the opinion of the supreme court, it is said : — " In this very case the policy, (that is the policy of the American insurance com-pany,) has never to this very day been avoided or surrendered to the company."   But in a suit previously brought upon it, the defendants had set up the misrepresentation, in defence, and this same policy had been decided by Mr. Justice Story, before whom the case was tried, to be utterly void, whereupon the plaintiff had discontinued his suit.   It is difficult to see how, upon these facts, it could be said, that the policy had not been avoided, or of what importance it was, that it had not been sur-rendered to the company.   It is certainly a very familiar princi-ple of the law of insurance, that a policy obtained by material misrepresentation is void.   Proving the misrepresentation by the insurers, is not regarded as an act necessary to avoid the po-licy, but as showing that the policy was void on that account.

The misrepresentation or mistake, as was said by judge Story, goes to the essence of the contract.   This principle was distinctly laid down by lord Mansfield, and has been implicitly adopted and acted on ever since.   He says : " Although the suppression should happen through mistake, without any fraudulent intention ; yet still the underwriter is deceived, and

the policy is void, because the risque run is vastly different from the risque understood and intended to be run at the time of the agreement." *Carter* v. *Boehm*, 3 Bur. 1905, 1909.

It is not easy to perceive, upon what principle the distinction between void and voidable, a distinction in regard to a policy of insurance, which, it is believed, is found nowhere else, could affect the right of the plaintiff in the case of *Car-. penter* v. *Washington Insurance Company.* The policy, in that case, upon which the suit was brought, was to be void, if the insured at the time had other insurance on the property. It appearing, that at that time, there was a policy on the property made by the American Insurance company, if it did not distinctly appear to the court that that policy was invalid and not binding on the company, then of course it must be treated as an insurance on the property, which would avoid the defendants' policy. But if it did appear, distinctly and clearly, to the court, that this policy was not binding in law, that it had no legal validity and could not be enforced, it would seem that it could with no propriety and in no proper sense be called an insurance. In the opinion in *Carpenter* v. *Washington Insurance Company*, 16 Peters, 509, it was said: "And it may well be doubted, whether a party to a policy can be allowed to set up his own misrepresentation to avoid the obligations deducible from his own contract." But the question was, what was his contract? As the defendants maintained, that the policy made by them was void, because the plaintiff had other insurance, there would seem to be no sound reason, why the plaintiff should not be permitted to meet this defence, by showing that in reality and in fact he had no such insurance. In the case now before the court, it did not appear that the misrepresentation as to the incumbrance was made fraudulently; it might have been by mistake or accident, which would equally avoid the policy.

Upon a careful consideration of the whole subject, we are fully satisfied of the correctness of the doctrine held by this court in the case of *Jackson* v. *Massachusetts Mutual Fire Ins. Co.* 23 Pick. 418, which is fully supported by the decision of the supreme court of Pennsylvania before referred to.

The only remaining ground of defence in this case is, that the levy of the execution was an alienation of the property. But as the plaintiff had still a right of redemption, and thus an interest in the property, this ground of defence cannot be maintained.   *Strong* v. *Manufacturers Ins. Co.* 10 Pick. 40.

*Judgment for the plaintiff.*