## WILLIAM A. HALL, Respondent, *v.* EBERT WESSTER, Appellant.

### April 8, 1879.

Where all the purchasers of an estate are bound by restrictive covenants not to use their property for certain purposes, an injunction will be granted to restrain a breach of the covenant, without regard to the question of the character or degree of annoyance caused by the breach.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

McGAFFEY & STEBER and H. B. WILSON, for appellant : A prohibition against keeping a milk dairy, being in restraint of trade, will be strictly construed. — *Harrison* v. *Brooks*, 20 Ga. 537 ; *Trustees, etc.* v. *Lynch*, 39 N. Y. 383. The general rule is that an injunction will not be granted where no injury is shown, and courts of equity will not, by injunction, enforce a naked legal right. — *Bosby* v. *McKim*, 7 Har. & J. 469 ; *Railroad Co.* v. *Guyon*, 6 Bush, 486 ; *Railroad Co.* v. *Baker*, 27 N. J. Eq. 166. The question to be determined is one of comparative injury, and the court will be governed by considerations of the relative inconvenience likely to result to the parties from granting or refusing relief. — High on Inj., sects. 717, 718 ; *Higbee* v. *Railroad Co.*, 20 N. J. Eq. 435 ; *Railroad Co.* v. *Prudden*, 20 N. J. Eq. 531. Where a covenant is indefinite and uncertain in its provisions, no injunction will be allowed. — *Morse* v. *Mill Co.*, 42 Me. 119 ; *Sparhawk* v. *Railroad Co.*, 54 Pa. St. 401 ; *Clark* v. *Insurance Co.*, 64 N. Y. 33. This was not a proper case for an injunction. — *Olmstead* v. *Loomis*, 6 Whart. 152 ; Willard's Eq. Jur. 342, 408. Where the plaintiff has slept upon his rights, and allowed money to be spent in the business complained of, an injunction will not be granted. — *Water Lot Co.* v. *Bucks*, 5 Ga. 315 ; *Whitney* v. *Railroad Co.*, 11 Gray, 367 ; *Win's Appeal*, 74 Pa. St. 230.

E. P. JOHNSON, for respondent : The violation of an express stipulation in such cases is sufficient to authorize an injunction. — Kerr on Inj. 533, 534, sects. 59, 60 ; High on Inj. 417, sect. 714 ; id. 420, sect. 717. And id. 421, sect. 719, negatives the idea that the act need amount to a nuisance either in law or equity, public or private. And injunction will lie, even where there is a right of reëntry in the person asking for it. — Id. 418, sect. 715 ; id. 422, sect. 721. The following authorities sustain

the position of appellant: Wood's Law of Nuis. 826, sect. 755 ; Kerr. on Inj., side-p. 530, sect. 56 ; High on Inj. 426, sect. 727 ; *Steward* v. *Winter*, 4 Sandf. Ch. 587 ; *Seymour* v. *McDonald*, 4 Sandf. Ch. 502 ; *Parker* v. *White*, 32 L. J. 520 ; *Clark* v. *Martin*, 49 Pa. St. 289 ; *Hills* v. *Miller*, 3 Paige Ch. 254 ; *Trustees, etc.* v. *Cowen*, 4 Paige Ch. 510 ; *Barrow* v. *Richards*, 8 Paige Ch. 351 ; *Parker* v. *Nightingale*, 6 Allen, 341 ; *Whitney* v. *Union R. Co.*, 11 Gray, 359 ; *Easton* v. *Railroad Co.*, 14 Ohio St. 54 ; *German* v. *Chapman*, L. R. 7 Ch. Div. 271 ; *Luker* v. *Dennis*, L. R. 7 Ch. Div. 227 ; *Richards* v. *Revitt*, L. R. 7 Ch. Div. 224 ; *Rutherford* v. *Taylor*, 38 Mo. 315 ; *Price* v. *Thompson*, 48 Mo. 361.

BAKEWELL, J., delivered the opinion of the court.

This was an application for an injunction to restrain the defendant from keeping a milk-dairy on certain premises described. The plaintiff moved for judgment upon the petition and answer, and the court thereupon granted the restraining order as asked, and perpetually enjoined the defendant from keeping a milk-dairy on the premises.

The question presented is, whether, on the admitted facts of the case, plaintiff was entitled to the relief prayed. These facts are, that in June, 1869, the Laclede Association laid off into lots and blocks eighty acres of land in the county of St. Louis, and offered the lots for public sale. The lots were chiefly valuable for private residences ; and to enhance their value for this purpose, it was proclaimed at the sale that the same would be made in consideration of restrictions to be contained in the deed for each lot sold. These restrictions were, that neither the purchaser nor any one claiming under him should erect or keep or permit on the premises conveyed to him any slaughter-house, stock-yard, milk-dairy, glue, soap, candle, or white-lead factory, brewery, or disorderly house, or any other erection or establishment which might be a nuisance, on pain of for-

feiture. At this sale the plaintiff bought a lot for the sum. of $200, and received a deed containing the above condition, and built a house on the lot, in which he resides. The defendant, at the same sale, purchased sixteen contiguous lots, and received a deed with the same condition. These lots are situated on low ground on the line of the railroad track, and distant a quarter of a mile from the lot of plaintiff. At the time of the purchase, large buildings, unfitted for residence purposes, were erected on these lots, which are not, and never can be, desirable for residence purposes. The defendant paid $7.061.50 for these lots and improvements, and has since expended $2,000 more in improvements upon them. He has invested his entire means there, and keeps upon the premises a cow-stable in which are from twenty to thirty cows, whose milk he sells in St. Louis, and upon this business he wholly depends for the support of himself and family. The lots are surrounded by a tight board fence fifteen feet high ; only the top of the stable can be seen from the outside ; the premises have always been kept in a clean and wholesome condition, and free from every thing which can cause annoyance to the neighbors. There is nothing apparent from which one outside could know that a cow-stable is there. No road or street leads to the plaintiff's residence from the premises of the defendant. To restrain the defendant from carrying on this business there would render the improvements comparatively worthless and cause irreparable loss to the defendant, who purchased and expended his money in establishing this business in good faith, believing that no one would object to his carrying on his cow-stable in this locality so long as he caused no nuisance. It also appears that whilst a considerable portion of the eighty-acre tract is, by reason of depressions in the surface, and contiguity to the railroad, unsuited for residence purposes, yet that, in other parts of the tract, lots have been sold to purchasers who have

erected handsome dwellings and ornamental improvements, and who reside there with their families.

The rule is that a party will not be permitted to use land in a manner inconsistent with the contract entered into with his vendor, and with notice of which he purchased. And if the right at law under the covenant is clearly established, and the breach is clear, and the covenant one that can be specifically enforced, the courts will not, unless under exceptional circumstances, take into consideration the comparative, injury to the parties from granting or withholding the injunction. But though the fact that there has been a breach of the covenant is a sufficient ground for the interference of a court of equity, there are cases, in which there has been no appreciable or substantial damage, in which an injunction will be refused. Kerr on Inj. 531–533. So, where ground had been conveyed on condition that the bargainees should be restricted to the privilege of erecting and running a saw-mill on the premises; they used the building for other purposes; no injury was shown to be likely to result to the plaintiff from the additional machinery; considerable expense had been incurred in its construction, and the plaintiff had slept upon his rights; the court refused to interfere by injunction. *Water Lot Co.* v. *Bucks*, 5 Ga. 315. So, in *Whitney* v. *Railroad Company*, 11 Gray, 367, it is said that a suit in equity to compel compliance with such stipulations concerning the use of property must be seasonably commenced, before the persons in possession have expended money in erecting buildings on the premises. It would be contrary to equity to suffer a party to lie by and see acts done involving expense to others, and then permit him to enforce his rights and thereby inflict loss and damage on persons acting in good faith.

It cannot be said that it appears in the present case that there has been any such delay in a prompt assertion of the plaintiff's rights. It is true that a cow-stable had been

kept on these premises for years, but it is not alleged that the plaintiff knew this ; and it is alleged by the defendant that the premises were so kept and the building so constructed that no one from the outside could know from their appearance, or otherwise, that they were put to this use. It does not appear that the buildings on the premises were erected for a dairy or cow-stable ; they were not built by the defendant, but were there when he bought the place. The defendant, with his eyes open, took his land subject to a servitude for the benefit of all the other land of which it formed originally a parcel, composing the tract sold by his grantor. He and all the purchasers in this subdivision were bound to observe the stipulations in their deeds in favor of the other grantees of land in the same tract. It is said in *Parker* v. *Nightingale*, 6 Allen, 349, that if it was shown that one or two owners of land were insisting on the observance of restrictions and limitations contrary to the interest and wishes of a large number of proprietors having similar rights and interests, by which great pecuniary loss would be inflicted on them, or a great public improvement be prevented, a court of equity might hesitate to use its powers to restrain a breach of that restriction. But the present is no such case. We are referred to several cases in which courts of equity have refused to entertain jurisdiction to restrain public nuisances, but such cases are not in point. The case before us is not founded upon any right of an individual sufferer to enjoin an offence against the public by which he sustains peculiar damage. In fact, it is not a case of nuisance at all. It appears that this cow-stable is not a nuisance ; nor does it appear that the plaintiff is particularly damaged, or damaged at all, by it. This action is based upon the mere fact that there has been a breach of covenant ; that the plaintiff had a right to enjoy his property in the manner and form provided by the stipulation in his deed and in that of the defendant, and that he has a right to judge whether the agreement shall be pre-

served or whether he will permit it to be violated.  *Lloyd* v.
*Railway Co.*, 2 De G. J. & S. 568 ; *Dickenson* v. *Canal
Co.*, 15 Beav. 260 ; *Steward* v. *Winters*, 4 Sandf. Ch. 587 ;
*Clark* v. *Martin*, 49 Pa. St. 289.    Where all the purchasers
of an estate are bound by restrictive covenants not to use
their houses for certain purposes, an injunction will be
granted to restrain a breach of the covenant, without any
regard to the question of the character or degree of annoy-
ance.    The objection may be founded on the merest whim.
Thus, in London, where houses were sold over a tract of
fifty-seven acres, and the covenants of the purchasers were
that no building erected on the land should be occupied
otherwise than as a private residence, the use of a building
for a school was held to be a breach of the covenant, and
was restrained.    *German* v. *Chapman*, L. R. 7 Ch. Div.
271.    The effect of such restrictions inserted in contempo-
raneous conveyances, under the circumstances set forth in
these pleadings, confers a right in the nature of an easement
in all the lots in the tract, on each person acquiring by such
deeds, and enters into the consideration by increasing the
price of some lots, and diminishing, perhaps, that of other
lots in the same tract.    *Parker* v. *Nightingale*, 6 Allen,
348.    Thus, in the present case, if the lots purchased by
the defendant were unfit for residence purposes, they were
probably purchased at a cheaper rate than would otherwise
have been the case, owing to the restriction against using
them for certain trades for which it is claimed they were
peculiarly adapted.

The fact that the plaintiff resides at the distance of a
quarter of a mile from this cow-stable is immaterial.
*Richards* v. *Revitt*, L. R. 7 Ch. Div. 226.    He may desire
not to have a cow-stable within a quarter of a mile from his
house, and he may have bought in this tract to gratify that
desire.    If the question of the degree of injury done to the
plaintiff by the violation of a covenant of this character
was to be open as a ground for denying relief, covenants of

this character would be of little value. The meaning of the agreement that the defendant made is plain. It is not that he shall not maintain a milk-dairy that shall be a nuisance, but that he shall not maintain on this lot a milk-dairy at all, or any other establishment which shall be a nuisance. If the condition were merely against nuisances, or noxious or annoying trades, it would be a question of degrees; but where a specific thing is totally prohibited, it is not a question of degrees.

It is obvious that the fact that the lots of the defendant, and other lots in this tract, are situated in depressions, or on the line of the railroad, and that they were therefore unfit sites for commodious residences, can be no excuse for a breach of covenant not to use them for the purposes excepted in the deeds. The fact that such sites existed in the locality may have furnished a special reason for the insertion of the covenant, and without some such provision it might have been impossible to sell out the remaining lots to those desiring to erect dwellings of the better class. But, however that may be, this case does not present any of those exceptional circumstances which take it out of the general rule that a breach of a covenant of this character is a sufficient ground for the interference of a court of equity. If it appeared that the plaintiff had acquiesced by allowing the defendant to go on and establish a business and to expend money, that the plaintiff had notice of this, and then, when the business had become prosperous, tried to stop him, a different case would be presented. What circumstances of such a character would create an estoppel, it is not necessary to inquire. It does not appear that the plaintiff had notice of the existence of the dairy for any considerable time before suit.

The judgment of the Circuit Court will be affirmed. All the judges concur.