Spahr v. Cape.

---

WALTER H. SPAHR et al., Respondents, v. LEANDER W. CAPE et al., Appellants.

St. Louis Court of Appeals, November 2, 1909.

1. **BUILDING RESTRICTIONS: Change of Restrictions.** It is beyond the power of the grantors of a subdivision or the owners of lots therein to change the building restrictions on lots therein, without the consent of all who had purchased under covenants providing for such restrictions.

2. ————: **Property Becoming More Suitable for Business Than Residence Purposes.** The mere fact that lots, subject to building restrictions created by covenants in deeds, by which they were limited to use for residence purposes only, become more valuable or suitable for business than for residence purposes is not enough to justify a court in overturning and nullifying such covenants.

3. ————: ————: **Street Railway Tracks in Street.** The mere presence of street railway tracks in a street will not turn it from a residence into a business thoroughfare.

4. ————: **Estoppel to Enjoin Violation.** It is *held* that no acts on the part of plaintiff were proved to constitute an estoppel.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney,* Judge.

MODIFIED AND AFFIRMED.

*J. C. Kiskaddon, G. A. Wurdeman, Chas. A. Powers* for appellants.

(1)  The remedy by injunction to prevent the violation of a negative agreement, or a contract not to do a particular thing, is closely akin to the remedy by way of the specific performance of an agreement of an affirmative nature.  By enjoining the violation of a negative contract a court of equity in effect decrees its specific performance.  And the jurisdiction of a court of equity to grant such injunction is substantially coincident with its jurisdiction to compel specific performance.  Both are governed by the same rules.  2 High on Injunc. (4 Ed.), sec. 1134 et seq.; 4 Pom. Eq. Jur., sec. 1341.  (2)  It is elementary equity law that courts of equity exercise a sound judicial discretion, not an arbitrary discretion, in decreeing the specific performance of affirmative contracts.  Courts will grant or refuse relief according to the circumstances of each case.  If it is equitable to afford such relief it will be gven; if inequitable, it will be refused.  Fish v. Lightner, 44 Mo. 268; Paris v. Haley, 61 Mo. 453; Sease v. Cleveland Co., 141 Mo. 488; Veth v. Gierth, 92 Mo. 97; Taylor v. Williams, 45 Mo. 80; Pomeroy v. Fullerton, 131' Mo. 581; Holman v. Conlon, 143 Mo. 369; Shinkle v. Vickery, 156 Mo. 1. · (3)' Specific performance will not be granted where the decree would be unjust, and generally not in any case where such a decree would be inequitable under all the existing or changed circumstances.  Veth v. Gierth, 92 Mo. 97; Taylor v. Williams, 45 Mo. 80; Pomeroy v. Fullerton, 131 Mo. 581, et seq.; Holman v. Conlon, 143 Mo. 369, et seq.; Scharer v. Pantler, 127 Mo. App. 433.  (4)  If the remedy by

injunction to enforce negative contracts is governed by the same rules as the remedy by specific performance to enforce affirmative contracts, it follows that injunctive relief will not be granted to enforce negative contracts where, under similar circumstances, specific performance would not be decreed to enforce affirmative contracts. (5) Where it appears that there has been an original plan or scheme for the improvement of adjacent property, and restrictions have been placed on all the property in furtherance of such scheme, yet if it further appears, as it does in the case at bar, that a change has been made in the scheme without objection by parties interested, or that the parties interested have acquiesced, without objection, to the use of the property for other purposes, then the scheme has been abandoned and equity will not interfere to enforce the restrictions. Peck v. Matthews, L. R., 3 Eq. (Eng.) 514; Duncan v. Railroad, 85 Ky. 525; Ewertson v. Gerstenberg, 186 Ill. 344; Coughlin v. Barker, 46 Mo. App. 54. (6) If it appears, as it does in the case at bar, that the plaintiffs, and others having similar titles, have stood by and without objection have seen numerous breaches of the restrictions committed by other parties, in like condition with the defendant, then plaintiffs are in no position to invoke the aid of equity to enforce such restrictions against defendant. Peck v. Matthews, L. R., 3 Eq. (Eng.) 514; Jackson v. Stevenson, 156 Mass. 496; Ware v. Smith, 156 Mass. 186; Jenks v. Pawlowski, 98 Mich. 110; Ewertson v. Gerstenberg, 186 Ill. 344; Orne v. Friedenberg, 143 Pa. St. 487. (7) If, from the lapse of time, the change in the character of the neighborhood, and the use to which the property in the neighborhood is put, the property in question, and property in like situation, has ceased to be of value, or is of little value, for the purposes to which it was originally restricted, and has become of greater value for other purposes, then it would be inequitable to enforce the restrictions, and a court of equity will, taking into

consideration all the circumstances, refuse to grant relief by injunction, but will remit the parties to some other remedy. Bedford v. Museum, 2 Myl. & Keene (Eng.) 552; Sayers v. Collier, L. R., 24 Eq. (Eng.) 180; Duncan v. Railroad, 85 Ky. 525; Jackson v. Stevenson, 156 Mass. 496; Page v. Murray, 46 N. J. Eq. 325; Columbia College v. Thacher, 87 N. Y. 311; Amerman v. Deane, 132 N. Y. 355; Ewertson v. Gerstenberg, 186 Ill. 344; Orne v. Friedenberg, 143 Pa. St. 487; Coughlin v. Barker, 46 Mo. App. 54; Scharer v. Pantler, 127 Mo. App. 433.

*C. J. Harrison* for respondents.

(1) Injunctive relief is the only true remedy to enforce covenants made for the common benefit, or to prevent a multiplicity of suits, even though the trespasser is solvent. R. S. 1899, sec. 3649; Saunders v. Dixon, 114 Mo. App. 254; Land Co. v. Manning, 98 Mo. App. 256. (2) Where all the purchasers of an estate are bound to use their property for certain purposes, an injunction will be granted to restrain a breach of the covenant, and a party will not be permitted to use land in a manner inconsistent with the contract entered into with the vendor, and with notice of which he purchased. High on Injunctions (2 Ed.), secs. 849 and 851, p. 538; Hall v. Wesster, 7 Mo. App. 56; St. Louis Safe D. B. v. Kennett Estate, 101 Mo. App. 398. (3) A continuous violation of covenants in regard to the use and enjoyment of lands and tenements, especially if the consequent damages cannot be readily estimated or compensated, presents a proper occasion for equitable relief by injunction. St. Louis Safe D. B. v. Kennett Estate, supra. (4) No court can accept the doctrine that contracts may be violated at will, and a party will not be permitted to disregard a solemn engagement on the plea that no harm will result to the other party. Hall v. Wesster, supra; Ives

v. Edison, 50 L. R. A. (Mich.) 134; Johnston v. Hyde, 32 N. J. Eq. 446; Tillotson v. Smith, 32 N. H. 90; Dickerson v. Canal Co., 15 Beav. 260. (5) In order to charge one with laches it must appear that the other party has been injured by the delay. Lapse of time is not sufficient. Real Estate Co. v. Lindell, 142 Mo. 78; McIntyre v. Pryor, 173 U. S. 38; St. Louis Safe D. B. v. Kennett Estate, supra. (6) Acquiescence imports and is founded upon knowledge. Acquiescence cannot arise unless the party against whom it is set up is aware of his rights. Hermon on Estoppel, sec. 1062; Garesche v. Inv. Co., 146 Mo. 451; Blodgett v. Perry, 97 Mo. 272; Harrison v. McReynolds, 183 Mo. 550. (7) The covenants in the deeds to property in Maplewood subdivision are not obnoxious to the rule against perpetuities. Stevens v. Realty Co., 173 Mo. 511. (8) Abandonment of an easement must be done by some act accompanied with an intention to abandon. Whether the act amounts to an abandonment or not, depends upon the intention with which it is done. 2 Washburn R. P. (4 Ed.), 371.

*Wm. F. Smith*, of counsel for respondent Lang, filed argument.

STATEMENT.—Adopting in substance the statement of counsel for appellants in their principal brief, this is an action to restrain appellants, defendants below, from erecting a store or business house on certain lots in Maplewood subdivision, on Sutton avenue, in St. Louis county. Maplewood subdivision was laid out in the county and the lots of the subdivision, except those fronting on Manchester avenue, were conveyed to different parties, subject to certain conditions and restrictions, including the following:

"First, when a building is erected on said lot the front of said building shall not be less than twenty feet distant from the line of the street on which it

fronts; but this provision shall not apply to the foundations of pillars, or open porches or verandas which may be built on the front of said residence.

"Second, not to erect or permit to be erected, occupied or used on said property any dramshop, or saloon, or livery stable, tannery, slaughter-house, dairy, boneyard, public cattle-shed, glue factory, nor any building designed or intended to be used for such purpose or purposes; also not to establish, maintain or permit any nuisance of any character on or adjacent to said property, and not to erect any building on said property to cost less than $1800 when completed.

"Third, not to erect or cause to be erected on said premises any building designed or intended to be used for any purpose except as a private residence.

"Fourth, it shall be lawful for any other person or persons owning any lots or parts of lots in said Maplewood subdivision, in behalf of and for the benefit of either themselves or the said owner or owners, or for any or either of them, to prosecute any proceeding at law or in equity against a person or persons infringing or attempting to infringe, or omitting to perform or to keep, observe or abide by said provision or provisions, for the purpose of preventing them from so doing, or collecting damage for such infringement or omission, or both."

It is further alleged in the petition that plaintiffs are owners of certain lots in the subdivision and that the defendant Cape is the owner of the west fifty feet of lots 1, 2 and 3, of block 4, having a front of one hundred and fifty feet on Sutton avenue, by a depth of about fifty feet on Maple avenue; "that Cape received property subject to said restrictions, but nevertheless is proceeding to erect thereon a building designed to be used as a store or business house and flats; that the front of said building as now planned will not be twenty feet distant from the line of the street on which it fronts, and that defendants Grannon and

Koester are the contractors erecting the same; the plaintiff thereupon prayed for an order restraining the erection of said building, and for a further order restraining defendants from erecting at any time a store or business house or flats, or any other building on said lots except a private residence to cost not less than $1800, the front of which to be not less than twenty feet distant from the line of the street on which it fronts.

The answer of defendants admits the facts set out in the petition as to the subdivision of Maplewood, the conveyance of the lots subject to said restrictions and admits that the restrictions are truly set forth in the petition, and that defendant Cape is the owner of the west part of lots 1, 2 and 3, in block 4 of said subdivision; and that the same is subject to the conditions, restrictions and terms hereinbefore admitted to exist except so far as they may have been determined, abrogated, changed or annulled by the acquiescence and consent of the owners and grantors of said subdivision. Defendant Cape also admits that he is proceeding to erect a building on the west part of lots 1 and 2, of block 4, being a brick store and for office purposes, and that the same will not be within twenty feet of Sutton avenue and is designated to be constructed of brick, two stories high, at a cost of about $5000.

The answer further alleges that the subdivision referred to in the petition was surveyed and laid off in lots before the conditions were made and imposed thereon, and that lots 1, 2 and 3, of block 4, and all other lots of said subdivision adjoining Sutton avenue in blocks 4 and 6 fronted on Sutton avenue and not on the streets intersecting Sutton avenue, but that before defendant Cape acquired title to said parts of said lots the Maplewood Realty Company had abandoned the plan and design of said survey and divided and sold a large number of lots on Sutton avenue, among others the said parts of said lots in question by dividing and

selling said lots along Sutton avenue at right angles to the plan of the original survey. That at the time the subdivision was laid out there were no street railroad tracks along Sutton avenue, and that since said time a double track railway has been laid along said avenue and are in frequent daily and nightly use; that immediately opposite the lots in question there has been constructed a loop and depot building for the use of the said railway, and a depot building in constant use for railway purposes; that on a number of the lots of said subdivision fronting on said Sutton avenue parties have, without any objection made by any of the property holders in said subdivision or by these plaintiffs, erected and now maintain buildings which are not used for residence purposes, but are maintained and used for business purposes, that cost less than $1000, and are built within less than twenty feet of the front of the lots on said avenue; that on the opposite side of said avenue numerous other kinds of business are now and for a long time have been carried on; that by reason of the premises said Sutton avenue and the lots fronting thereon in said subdivision have ceased to be desirable for purely residence purposes, and are only desirable or valuable for business purposes.

In reply to this answer the plaintiffs admit that there is a street railway in operation along Sutton avenue, and the loop has been erected opposite the lots in question, and they also admit that there have been business houses erected on Sutton avenue north and west of Maplewood subdivision, and that there are two small temporary buildings on said Sutton avenue, in said subdivision, one of which is owned by defendant Koester, and used by him as an office, and the other one is owned by Dr. Townsend, but that the buildings are small, temporary structures, set upon small posts and costing only a nominal sum; and they deny that they ever consented to the erection of said small buildings and their present use.

Still following the statement of appellants' counsel, the facts in evidence are that the subdivision, "called Maplewood," was platted in 1891. The property lies immediately west of the city limits on the Manchester Road. At the time the subdivision was made it was a raw piece of land, and Sutton avenue was simply an unimproved country road. Maplewood subdivision proper is set out on a plat attached to plaintiffs' abstract of the record, and is bounded by Marshall avenue, Manchester Road, Elm avenue and Sutton avenue. All the lots in the subdivision were disposed of by the company, and, with the exception of the lots fronting on the Manchester Road, the deeds conveying the same contain the restrictions set out in the petition. As an inducement for the street railway company to build to their subdivision the Realty Company built the station opposite the property in question, and induced the railroad company to make a five-cent fare to the station. The street railroad was built about twelve years ago, coming out the Manchester Road and turning south on Sutton avenue to the station, where the cars turn, and other cars carry passengers farther west to Kirkwood and Webster and Meramec Highlands from this point. The station consists of a waiting room, confectionery store and place for sale of soft drinks, and is used up to two o'clock in the morning for passengers who are transferred from western to western cars, and *vice versa*. Large crowds often congregate in front of this station and there is much noise and confusion by these people at all hours up to two o'clock. Sutton avenue is also used as a traffic way and thoroughfare for hauling freight from the Missouri Pacific Railroad on the south to the business establishments located in Maplewood on Manchester Road and elsewhere.

"According to the testimony of Mr. Koester, there are thirty-one business establishments on Sutton avenue, between Manchester Road and the Missouri

Pacific Railroad; they include a grocery store, tombstone shop, two paint shops, tin shop, a gas-fitting shop, real estate office, lumber yard and office, two doctors' offices and contractor's office on the east side of the street, and a concrete and coal yard, a real estate office, the loop and station heretofore mentioned, a drugstore, butcher shop and grocery, tin shop, two-story steam-power planing mill, real estate and paint shop, undertaking establishment and livery stable, storage room, machine shop and hardware store, all on the west side of Sutton avenue.

"It further appears from the testimony of Mr. Koester that the lots of Maplewood subdivision fronting on Sutton avenue are occupied by two doctors' offices, and two double store buildings occupied by contractors, painters, real estate agents, architects and stenographers, a photograph of which is shown on plate, Exhibit 1. These business establishments have been erected and carried on in this restricted property for some four or five years without objection by anyone.

"It also developed from the testimony that there is not a single residence fronting on Sutton avenue from Manchester avenue south to Elm avenue, and that said Sutton avenue is wholly devoted to business purposes in the vicinity of the lots in controversy. Testimony of real estate agents of the neighborhood, and others who had knowledge of the surrounding property in Maplewood, was to the effect that the lots fronting on Sutton avenue had a very small or no value for residence purposes, but were only valuable for business."

There was no claim or pretense of lack of notice to defendants of the restrictions on the subdivision and on these lots. There was testimony tending to prove that no injury to the property of plaintiffs or of any lotowner in Maplewood subdivision had been sustained by reason of business being carried on on Sutton avenue, either by depreciation in values or by way of

noise or other causes; nor was there any testimony tending to show that the building contemplated to be erected by defendants would cause any actual damage to plaintiffs or other property-owners in the subdivision.

The court rendered a decree finding the issues for plaintiffs and making the temporary injunction which had been issued permanent. Plaintiffs in due time filed their motion for new trial which was overruled, exceptions saved and the case brought to this court on appeal.

REYNOLDS, P. J. (after stating the facts).— Cases involving the question of infringement and en-. forcement of restrictions on the use and occupation of lots and tracts of land, particularly in and adjoining the city of St. Louis, have been before this court and have been so carefully considered and the law relating thereto so clearly stated and settled that it is not necessary to undertake any extensive discussion of the principles underlying this class of cases.

In Hall v. Wesster, 7 Mo. App. 56, decided in 1879, in a carefully considered opinion, delivered by Judge Bakewell, this court announced the rule to be (l. c. 60), "that a party will not be permitted to use land in a manner inconsistent with the contract entered into with his vendor, and with notice of which he purchased. And if the right at law under the covenant is clearly established, and the breach is clear, and the covenant one that can be specifically enforced, the courts will not, unless under exceptional circumstances, take into consideration the comparative injury to the parties from granting or withholding the injunction." The court further said (l. c. 61), that the action in such case "is based upon the mere fact that there has been a breach of covenant; that the plaintiff had a right to enjoy his property in the manner and

form provided by the stipulation in his deed and in that of the defendant, and that he has a right to judge whether the agreement shall be preserved or whether he will permit it to be violated." Calling attention to the fact that there are cases in which there has been no appreciable or substantial damage, in which an injunction will be refused, the court holds (l. c. 62): "Where all the purchasers of an estate are bound by restrictive covenants not to use their houses for certain purposes, an injunction will be granted to restrain a breach of the covenant, without any regard to the question of the character or degree of annoyance. The objection may be founded on the merest whim."

In Coughlin et al. v. Barker, 46 Mo. App. 54, a decision rendered in 1891 and in which full consideration to questions involved in cases of this character was given by Judge Seymour D. Thompson, the distinction between covenants running with the land, and those personal to the parties, is gone into and the conclusion of the court is, that if the owner of several adjoining lots conveys one of them with a restriction as to the manner of building thereon and subsequently conveys another, if said restriction was intended for the benefit of the last mentioned lot and not merely as a covenant for the benefit of such owner personally, the grantee of such last mentioned lots, and his assigns, can enforce such restriction against every one of the grantees of the first mentioned lot, acquiring title under or through such conveyance, and taking with notice, actual or constructive, of the restriction, and that the absence of a specific restriction in the deeds, or of an express intention that they are made for the benefit of the adjoining land, is an evidentiary circumstance tending to show that the restriction was intended by the grantor of the lot for his own benefit personally and not for the benefit of the adjoining land; that whether the easement is a personal right, or one pertinent to the land, is generally to be determined by a fair in-

terpretation of the grant or reservation creating it, aided, if necessary, by reference to the situation of the property and the surrounding circumstances. It was further held in that case, that the terms of the conveyance, when construed with reference to extrinsic circumstances, did not establish the necessary intention, but only established such intention conditionally.

In St. Louis Safe Deposit Bank v. Kennett's Est., etc., 101 Mo. App. 370, Judge GOODE, in a thoroughly considered opinion, held, all the members of the court concurring, that a party may restrain a continuous breach which is beneficial to him and stand on the very letter of his obligation, for a party cannot make a solemn obligation and then disregard it on the plea that no harm will result to the other party, the court further holding, in that case, that the mere failure to object at the time to a violation of the covenants and restrictions as to building, contained in the deeds of the parties, was not such acquiescence as estopped the plaintiff from subsequently suing to enjoin the continuance of the violation of the restriction. In that case, this court, following Hall v. Wesster, supra, in our State, and many cases from other jurisdictions, further held, that while the extent of the injury is vital, when a nuisance, unrelated to contractual rights, is the gravamen of the action, if parties settle their rights in regard to a parcel of land by covenants, these must be observed, whether their non-observance will inflict injury or not, the plaintiff having the right to restrain even a continuous breach which is beneficial to him, and to stand on the very letter of his obligation, "for a party may not make a solemn engagement and then disregard it on the plea that no harm will result to the other party."

In Saunders v. Dixon, 114 Mo. App. 229, the same question of building restrictions came before this court, and Judge GOODE again speaking for the court, repeated that where covenants containing the restric-

tions inured to the benefit of the complainant and were broken in a substantial way by the defendant, it was unnecessary to show that damage resulted from the breach. That was a case in which the covenant was against the erection of more than one dwelling house on the same lot. Referring to St. Louis Safe Deposit Bank v. Kennett's Est., supra, Judge GOODE said, that while the courts have some discretion in granting an injunction respecting restrictive covenants affecting the use of lands, "they are disposed to uphold such restrictions according to their true meaning and this court is strongly of that disposition."

In Semple v. Schwarz, 130 Mo. App. 65, Judge BLAND delivering the opinion for the court, and with the concurrence of all the court, held that the fact that the evidence showing that different restrictions were imposed in the conveyances of lots in another addition adjoining, laid off and conveyed by the same grantor, were inadmissible. In that case it was also held that the fact that the defendants had set apart a room in their residence for the express purpose of receiving patients, and that the defendant physician had let his patients know that they might call upon him there professionally between certain hours and that he had advertised this particular room as his office by tacking his professional card on the door, constituted the "doing of business," in violation of the covenant against doing business or carrying on business in a house erected on the lot, and the court enjoined the continuance of that use of any part of the premises.

Applying the principles in these cases to the facts in evidence in the case at bar, it appears in the first place that the defendant Cape had notice and knowledge of the restrictions; that he bought subject to them; that the proposed construction of a building in which a professional office or drugstore could be conducted, was in the mind of the defendant in the erection of the

proposed building; and that the covenants covered all of the property and were common in the deeds of all the grantees, is very clear, and that these covenants inured to the benefit of all purchasers in the addition is also evident.

The argument that the parties laying off the Maplewood addition, or the originator of the scheme for the Maplewood addition had abandoned or modified the original scheme, and that that scheme had been "determined, abrogated, changed or annulled by the acquiescence and conduct of the owners and grantors of said subdivision," does not bring this case within the Coughlin Case. In the case at bar, the original covenants as to improvements affected all the lots covered by them. It was beyond the power of the originators of the scheme or owners of other lots to change them without the consent of all who had purchased under those covenants, those covenants, at the time of the purchase by plaintiffs of these lots, covering and being in force upon the lots purchased and plaintiffs not being of those who had assented to any change or release of the covenants.

Our attention is specifically called by one of the learned counsel for the appellants to the cases of Trustees of Columbia College v. Thacher, 87 N. Y. 311; Jackson v. Stevenson, 156 Mass. 496; Parker v. Nightingale, 6 Allen (Mass.) 341, as controlling under the facts in this case. In the Columbia College Case it was held that the new conditions had so entirely and completely changed the situation, these conditions, being the erection of the structure for and operation of an elevated railway in front of the premises, as to render the restrictions no longer serviceable. In the Jackson Case, at the time of the establishment of the restrictions, the neighborhood was intended to be and was used as a residence district; and in the Parker Case it is held that circumstances may exist which

would warrant a refusal to grant equitable relief, even when it was made to appear that there had been a failure to use and occupy the premises in accordance with the terms of the deed by which they were conveyed. These cases have all been before our court, in one or more of the cases before referred to, on different branches of them to be sure, but they are not cases with which this court is unfamiliar. An examination of them shows that they are not applicable to the case at bar. It appears that when Maplewood subdivision was laid out, the railroad did not extend to or through it, although the plat in evidence shows the road, a surface road, operated by electricity, as running through it and forming a loop through the block immediately west of the block in which these lots are situated. The cars run around this loop. All that the evidence tends to show is that the property adjoining this loop, as do the lots here involved, is more valuable for business than for residence purposes. It does not convince us that it has become unsuitable for residence purposes, and so does not come within the three cases cited. The mere fact that it is more valuable or suitable for the one purpose than the other is not enough to justify a court in overturning and nullifying the solemn covenants in the deeds. Nor is it true that the mere presence of a street railway along a street turns that street from a residence into a business thoroughfare. In brief, it does not strike us that the conditions developed by the testimony bring this case within the exceptions noted in the three cases relied upon by counsel. Neither do we think there is any violation of any principle of equity, on the facts in this case, in holding the parties to their own deliberately made and accepted covenants. Nor is there such a state of facts in this case as raise an estoppel against plaintiffs. Citing and

143 App—9

quoting Bales v. Perry, 51 Mo. 449, our Supreme Court, in Harrison v. M'cReynolds, 183 Mo. 533, l. c. 550, said: "Though silence in some cases will estop a party from speaking afterwards, yet 'it is only when it becomes a fraud that it postpones.' If, therefore, the truth be known to both parties, or if they have equal means of knowledge, there can be no estoppel." In the case at bar, the acts relied on as estoppels did not go even far enough to make a resort to this rule necessary. There were no acts proven, that, by any application of the rule of estoppel, can be said to have constituted an estoppel. On consideration of the evidence in the case and of the law as laid down by this court and enforced in the cases referred to, our conclusion is that the case was rightly determined. In entering up the decree, however, the injunction is made to cover all of lots 1, 2 and 3, whereas the evidence shows, and the trial court found, that appellant is owner, not of all of these lots, but of the western fifty feet thereof. Evidently that is a mere inadvertence in entering up the decree, possibly a clerical error, as the court distinctly found as a fact that appellant Cape was owner of only the western fifty feet of the lots. Accordingly the decree is modified so as to extend the injunction over the western fifty feet of lots 1, 2 and 3, of block 4, and as so modified it is affirmed. All concur.