## COMMONWEALTH *vs.* CITY OF NEWBURYPORT.

In the laying out of a bridge as a highway, by county commissioners, under the St. of 1868, *c.* 309, § 8, and according to the provisions of the St. of 1867, *c.* 296, § 4, that they should "determine and fix the relative proportions of expense for maintaining" the bridge, "to be borne by said county, and any of the cities or towns lying near to, or contiguous to" the bridge, "as in their judgment may be just and equitable, which said proportion of expense so determined" "shall become obligatory upon said county and upon said cities and towns as aforesaid, to pay in the manner and at the times prescribed by said county commissioners," the commissioners were authorized, but not required, to impose part of the expense for maintaining the bridge upon the county, or upon the cities and towns lying near but not contiguous to the bridge; and might lawfully impose the whole maintenance of the bridge on the several towns or cities within which it was situated, and determine and fix the relative proportions in which they should respectively bear the expense thereof, by assigning to each a specific part of the bridge to be maintained by it exclusively.

INDICTMENT on the Gen. Sts. *c.* 44, § 24, found and returned at January term 1869 of the superior court, and averring that,

un November 1, 1868, and from that time to the time of the finding of the indictment, there had been, and still was, a highway in Newburyport, leading from that city into the town of Salisbury; " and that a certain part of the same highway, situate, lying and being within the city of Newburyport aforesaid, to wit, so much of said highway as is covered by the bridge known and called by the name of the Newburyport Bridge, and as lies southerly of a line drawn three quarters of the whole distance from the southern end of said bridge, being three fourths of said bridge.next adjoining to said Newburyport, and containing in length, divers, to wit, two hundred rods, and in breadth, divers, to wit,.four rods, on the said first day of November was, and from that time until the day of the taking of this inquisition hath been, and still is, full of holes, without sufficient railing, rough, uneven, and without sufficient planking, covering and support, ruinous, broken, and in great decay, for want of necessary reparation and amendment of the same," so that it was unfit for travel; " and that the inhabitants of the said city of Newburyport, during all the time aforesaid, in their corporate capacity, the said highway ought of right to have kept in repair and amended, when and so often as it should or shall be necessary, but have neglected, and still neglect so.to do."

At the trial, before *Lord,* J., " the defendants admitted that the bridge, throughout its entire length, was, at the time of the finding of the indictment, defective, out of repair, and unsafe for travellers, and the attorney for the Commonwealth read to the jury the St. of 1867, *c.* 296, the St. of 1868, *c.* 309, § 8, and the record of the proceedings of the county commissioners of Essex," laying out the bridge as a highway.

The St. of 1867, *c.* 296, in its first section " authorized and empowered" the county commissioners " to lay out as and for highways " certain bridges across the Merrimack River, including " the Newburyport Bridge between the town of Salisbury and the city of Newburyport," and in § 4 provided that, " upon the laying out of any of said bridges as highways as aforesaid the said county commissioners shall determine and fix the relative proportions of expense for maintaining, keeping in repair

and supporting any of said bridges, and for raising the draws in said bridges, if any, to be borne by said county, and any of the cities and towns lying near to, or contiguous to said bridges, or any of them, as, in their judgment, may be just and equitable, which said proportion of expense, so determined upon by said county commissioners, shall become obligatory upon said county and upon said cities and towns as aforesaid, to pay in the manner and at the times prescribed by said county commissioners."

The St. of 1868, *c.* 309, § 8, which was passed June 5, 1868, provided that the county commissioners "shall, within sixty days after the passage of this act, lay out, as and for highways, the several bridges named" in the previous statute, including the bridge in question, "in the manner now provided by law for the laying out of highways, and according to the provisions of" the previous statute, "so far as the same are applicable."

The material part of the record of the county commissioners, after a preamble referring to the last named statute, and to the facts of notice to and hearing of all interested parties, was as follows:

"Now on this 4th day of August 1868, we do lay out said Newburyport Bridge between the city of Newburyport and the town of Salisbury as and for a public highway, in conformity with the requirements of the acts of the legislature of said yeal 1868. The charter of said Newburyport Bridge having expired, no damage is to be awarded. It is hereby ordered, adjudged and decreed that so much of said bridge as lies southerly of a line drawn three quarters of the whole distance from the southern end of said bridge, being three fourths of said bridge next adjoining to said Newburyport, shall be maintained, kept in repair and supported, and the expense thereof, and of raising the draw in said bridge, sha_ be paid by said city of Newburyport; and that the remainder of said bridge, being one fourth part thereof lying next to Salisbury aforesaid, shall be maintained, kept in repair and supported, and the expense thereof shall be paid, by said town of Salisbury."

No further evidence was introduced at the trial, and "no attempt was made to show where the dividing line between

Newburyport and Salisbury would intersect the bridge." It was agreed that the charter under which the bridge was erected expired in September 1867.

The judge therefore ruled that " the defendants were liable by law to keep that part of the bridge described in the indictment in repair ; " and, after a verdict of guilty, reported the case for the revision of this court.

*H. W. Paine,* for the defendants. The legislature did not contemplate charging any city or town with the maintenance of any part of the bridge. It contemplated the payment of money required to keep the bridge in repair, in fixed proportions, in the manner and at the times prescribed by the county commissioners ; and it intended that the whole expense of maintaining the bridge should not be borne by the cities and towns lying contiguous, but that the county should contribute its proportion, to be ascertained and fixed by the commissioners. The proceedings set out in the record were not in conformity with the requirements of the statute. The commissioners laid out the bridge as and for a public highway, and ordered that three fourths thereof in length be maintained, kept in repair and supported by the city of Newburyport, and the remaining one fourth by the town of Salisbury. They have not fixed the relative proportions of expense of the city or town ; and they have charged the county with no part of the expense. Whether three fourths of the length of the bridge lies in Newburyport or extends into Salisbury does not appear. The commissioners have omitted to do what they were empowered and required to do, and have undertaken to do what they had no authority to do. It may be much more expensive to keep in repair a given number of feet of one end of the bridge than the same number of feet of the other end. As they have undertaken to impose a burden on the city which they were not authorized by law to impose, their doings are void, and it is not necessary to proceed by *certiorari* to quash them. *Wales* v. *Willard,* 2 Mass 120. *Hunt* v. *Hapgood,* 4 Mass. 117. *Sumner* v. *Parker,* 7 Mass. 79.

*S. B. Ives, Jr.,* for the Commonwealth.

WELLS, J.* The St. of 1867, *c.* 296, authorized, and that of 1868, *c.* 309, § 8, required, the Newburyport bridge over tide water, between Newburyport and Salisbury, to be made a highway. The county commissioners, acting under that authority and direction, have laid it out "as and for a public highway." The result of these proceedings, if legal and properly conducted, is, to impose upon the city of Newburyport and the town of Salisbury the obligation to maintain and keep in repair so much of this bridge as lies within their respective limits, if " other provision is not made therefor." Gen. Sts. *c.* 44, § 1. If other provision has been made therefor, then their obligations are modified accordingly ; and each corporation is liable to indictment for neglect to repair any part of the bridge "which it is by law obliged to keep in repair." Gen. Sts. *c.* 44, § 24.

Several objections are taken to the validity of these proceedings.

1. It is argued "that the legislature intended that the whole expense of maintaining the bridge should not be borne by the cities and towns lying contiguous, but that the county should contribute its proportion." We do not think this to be the true construction of the statute. There were several bridges, in different parts of the county, to which the same words of the statute applied. The commissioners were empowered to impose some part of the expense of maintaining any of said bridges upon other towns " lying near to," as well as upon those " contiguous to," said bridge ; or to impose a part thereof upon the county. But they were required only to impose upon such towns, or upon the county, so much of the expense " as, in their judgment, may be just and equitable." And if, in their judgment, it should not appear "just and equitable" that any part of the expense should be apportioned to a town lying near, or to the county, the statute does not require it to be done as an essential condition of a legal exercise of the power. The judgment of the county commissioners is conclusive upon the pro-

* This case was argued at Boston, November 25, before all the judges but COLT, J.

portions to be fixed; the statute is imperative only in directing that they shall make the apportionment.

2. It is contended that the county commissioners have not fixed " the relative proportions," as required by the statute; and therefore that no legal responsibility results from their action. This argument proceeds upon the ground that such proportion necessarily implies a mathematical ratio, or a comparison of mathematical ratios. We do not think the statute is to be so narrowly interpreted. The " relative proportion " is to be fixed with reference to all the circumstances of benefit to the respective municipalities affected, and to their population, extent, and ability to bear the burden. Such a comparison does not require an absolute mathematical ratio for the other branch of the proportion. We are of opinion that it was within the power of the county commissioners to fix the proportion by assigning to each town a specific part of the bridge, if in their judgment that was just and equitable; and that such an apportionment was proper and reasonable.

3. It is urged that the statute contemplated the payment of money " in the manner and at the times prescribed " by the county commissioners, and not the charging of any city or town with the maintenance of any part of the bridge. This might appear to be so upon the mere letter of the statute. But there is no provision in the statute for the collection and expenditure of the money, and the care of the bridge. It is not charged upon the county commissioners. They are only to prescribe the manner and times of payment; and this is to be done as a part of the adjudication by which they " determine and fix the relative proportions." They are not to supervise the repairs, nor to continue to prescribe the manner and times for contributing to the expenses, from time to time, as occasion shall require. This duty is not imposed upon them by these special statutes, nor is it any part of their official duty under the General Statutes. The statute must fail of effect, if the commissioners may not prescribe the manner of payment by directing that the towns within which the bridge is situated, shall make the necessary expenditures to keep the bridge in repair, receiving from the

county, or other towns near to the bridge, such sums, if any, as may be fixed for their proportion of the expenses so incurred and paid. This we think is clearly within the intent of the statute; and a necessary implication to enable its provisions to have the practical operation it had in view. The order once made becomes obligatory upon all parties, to define and determine their rights and duties in respect to the maintenance of the bridge. So far as relates to the manner of making the necessary expenditures, this construction makes the statute accord with the provisions of Gen. Sts. *c*. 44, § 2.

These considerations are sufficient for the determination of the present case. The city of Newburyport and the town of Salisbury are liable to conviction upon indictment, for the want of repair of so much of the bridge as each was bound to repair within their respective limits; and it is admitted that the bridge was so defective throughout its entire length. As the dividing line between them is stated to intersect the bridge, some part of it must be within each. It did not appear that the whole of the three fourths part of the bridge, apportioned to Newburyport, was in fact included within the boundaries of that city. The jury were instructed that it was the duty of the city to keep that part of the bridge described in the indictment in repair. We suppose it was intended to apply this ruling to such part of the bridge as lay without the limits of Newbury port, as well as that within its limits, if there were any such part assigned by the commissioners to be kept in repair by that city. And we think the ruling was correct in this respect. The duty to keep ways and bridges in repair, imposed by Gen. Sts. *c*. 44, § 1, relates only to such as are situated within the city or town; but the liability to indictment under § 24 extends to any of the ways or bridges which the town is by law obliged to keep in repair. Although the general law provides for the maintenance of all roads and bridges, by imposing the duty upon each town to support those that are within its limits, yet the legislature may undoubtedly, by general provision or by special statute, modify this general rule, in particular cases, in order to make the distribution of the burden more equal than it might other-

wise prove to be in its operation. This it does by authorizing or requiring the county to assume a part of the expense of certain roads or bridges; thus indirectly imposing upon all the other towns in the county a part of the burden which, by the general rule, would fall upon the town within which the road or bridge was situate; or by authorizing a part of such expense to be imposed upon particular towns near to or benefited by such road or bridge. The power to impose the burden by way of contribution in money involves the right to do so by making it the duty of the town to keep its portion of the way or bridge in repair. And from this duty to maintain and repair flows the liability for defects, whether by action for damages or by indictment. *Malden & Melrose Railroad Co.* v. *Charlestown,* 8 Allen, 245. *Judgment on the verdict.*[*]

---

[*] A similar decision was made in the case of COMMONWEALTH *vs.* INHABITANTS OF SALISBURY, argued at the same time by the same counsel.