## JAMES M. KEITH vs. CITY OF BOSTON.

Suffolk.    March 21. — 28, 1876.    DEVENS & LORD, JJ., absent.

Upon a petition for the abatement of an assessment laid by a city for the construction
of a sewer, it appeared that culverts had been previously laid in the street and were
used by certain unnamed abuttors on the street for the purpose of drainage. *Held,*
that, in the absence of evidence that the culverts were laid out as sewers or that
the petitioner drained or had any right to drain from his estate into them, the exist-
ence of the culverts could not affect the question whether his estate was benefited
by the new sewer.

An overestimate of the number of square feet in the estate of a person benefited by
the construction of a sewer does not make an assessment by the city thereon in-
valid, if the estate was assessed no more than its just proportion of the expense of
constructing the sewer.

At the trial before a jury of a petition for the abatement of a sewer tax, the peti-
tioner offered evidence tending to prove the relative benefit received by the various
estates on the line of the sewer. The judge ruled that if the petitioner's estate
was benefited at all, it was to be assessed according to the value of the land, inde-
pendently of the buildings, and that the relative benefit, which each estate on the
line of the sewer might receive, was of no consequence in determining the amount
of the assessment to be laid on the estate, and rejected the evidence. The jury,
under this instruction, found that the petitioner's estate was benefited by the sewer,
and that the amount assessed upon it was a just proportion of the whole expense
of the construction of the sewer. *Held,* that the jury, upon the appeal of the peti-
tioner, had no authority to consider the relative benefit to other estates, and that
the instruction was sufficiently favorable to the petitioner.

PETITION to the Superior Court, for the abatement of an as-
sessment laid by the city of Boston upon the petitioner's estate,
situated on the corner of Shawmut Avenue and St. James
Street, in Boston, for the construction of a sewer in Shawmut
Avenue from Washington Street to Circuit Street.

At the trial in the Superior Court, before *Rockwell, J.,* the
plaintiff offered evidence tending to prove the relative benefit
received by the various estates on the line of the sewer, but the
judge ruled that if the plaintiff's estate was benefited at all, i*
was to be assessed according to the value of the land, indepen-
dently of the buildings, and that the relative benefit which each
estate on the line of the sewer might receive was of no conse-
quence in determining the amount of the assessment to be laid
on the estate, and rejected the testimony.

The plaintiff offered parol testimony tending to show that a
culvert had been laid, from Bartlett Street to Dudley Street, in

Shawmut Avenue, in 1855, for which the city of Roxbury and certain abuttors thereon paid by voluntary contributions; that no assessment was laid upon any person or estate on account thereof, and that the culvert existed at this time, and some of the abuttors on Shawmut Avenue drain their estates into the same, and in connection with this proof offered the following record from the records of the city of Roxbury: "April 2, 1855. The committee on highways, bridges and sidewalks, to whom was referred the petition of Henry Bartlett and others, that a sewer may be laid in Bartlett Street, to take the water from that and other streets, and also the waters that come down the brook which crosses Bartlett Street, have considered the matter of the petition, viewed the land and obtained estimates of the cost of the work. They find that great damages have been suffered by the owners of land on Bartlett Street in consequence of the overflows occasioned by the nonconducting capacity of the present culvert. They feel confident that a sewer will be required soon in this locality, which must necessarily be made at the city's expense. Those now to be relieved are ready to contribute towards the cost of the work. This can be done for the sum of $2000. And this committee recommend that the sewer be made, provided the abuttors will contribute $1000 towards the cost. For the Committee, James Ritchie, Chairman.

"Read and accepted and sent down for concurrence.

"April 9th came up concurred."

The plaintiff also offered parol testimony tending to show that in 1858 a culvert was laid from Circuit Street along Shawmut Avenue, and past the plaintiff's estate, to connect with the last-named sewer at Bartlett Street, and in connection with said testimony offered the following record from the records of the city of Roxbury: "March 22, 1858. Ordered, that the joint standing committee on streets be, and they are hereby instructed to take such measures forthwith as they may deem expedient for the best interests of the city, for widening and grading and reconstructing or repairing that portion of Shawmut Avenue formerly known as the Dedham Turnpike, according to the plans and profiles and written directions furnished to the city government during the year 1857, by the county commissioners, with authority also, if they should deem it expedient, so to alter the cur-

rent of the brook which now crosses the highway opposite Circuit Street as to conduct it by a stone culvert along the highway, until it connects the stone culvert leading from Bartlett Street to the square in front of Dudley Block, and constructed in 1855.

"Report read and accepted and order adopted. Sent down for concurrence.

"In Common Council March 22, 1858. Concurred.

"City Hall, Dec. 31, 1858. On the part of the committee on streets, to whom was confided the important work of grading and reconstructing that part of Shawmut Avenue formerly known as the Dedham Turnpike, and also of constructing a large culvert leading from Circuit Street to Bartlett Street, I beg leave to report that the work is completed, and the road is used as a travelled highway. It has been completed to the full satisfaction of the county commissioners, who have stated that they will accept it on the part of the county so soon as the overhanging rocks are removed from the ledges. Men have accordingly been employed for some weeks in attending to that work under the direction of the superintendent of streets.

| | |
|---|---|
| "The original appropriations for this work . . | $15,000 00 |
| "Received of Mr. S. Guild, as his proportion of the expense of the culvert . . . . . . | 491 00 |
| | $15,491 00 |
| "The amount paid to the contractor agreeably to the contract and sundries, and also to the surveyor, superintendent of the work, and other persons, is . . . . . . . . . . . | $16,236 00 |
| "Leaving a balance unprovided for of . . . . | $745 00 |

"In addition to the sum of $745 required to defray the expenses of the construction of the road and the culvert, there will also be an expense of some hundreds of dollars perhaps, for blasting and removing the overhanging rocks on the various ledges, which was done and is doing under the direction of the commissioner of streets and with the authority and at the suggestion of the county commissioners, who will accept the whole

road when this laborious task is performed, — a portion of the work which was never anticipated.

"John S. Sleeper, Chairman Committee on Streets.

"Read, and on motion of Ald. Lewis, Ordered to be entered on the records. Sent down for concurrence."

There was evidence tending to show that this culvert was constructed to take the water of a natural stream or brook; that it was constructed without any artificial bottom, the sides of stone and the top of flat stones resting thereon; that no assessment was laid upon any person on account thereof.

The defendant contended that the laying out of a sewer could not be proved by parol, and that record evidence only could be received. In view of this testimony the plaintiff's counsel asked the judge to instruct the jury that in deciding whether the estate was benefited by the drain the jury must take into consideration the means of draining the estate which existed when the new sewer was built. The judge refused so to charge the jury, and did charge "that if the plaintiff's estate was not benefited by the new drain then his estate was not chargeable with the assessment in controversy, and that in deciding the question whether the estate was or was not benefited by said drain they were not to take into consideration any evidence concerning the old drain above referred to, because there was no evidence before them showing the existence of any drain into which the plaintiff had a right to conduct the drainage of his estate prior to the construction of the new sewer; and the plaintiff's estate was never drained into the old culvert."

It was also in evidence that the plaintiff's estate contained 7896 square feet only, and the assessment showed that it was estimated as containing 8530 square feet. The superintendent of sewers for the city of Boston testified that he made an estimate of an assessment, and reported to the board of aldermen, and that his plan was to make an accurate survey, get the number of assessable square feet in an estate, and assess it at so much per foot; that he used his own judgment in ascertaining the value, then compared his valuation with that of the assessors, and then made up the estimate and submitted it to the board of aldermen; that in estimating the plaintiff's estate he intended to estimate the whole estate owned by the plaintiff as

the same measured in square feet, and taking the number of square feet in said estate to fix upon the same, per square foot, a valuation which should be fairly proportioned to the valuation, per square foot, of the other estates estimated upon for the sewer.

The plaintiff asked the judge to instruct the jury that if the petitioner's land was estimated in amount larger than he owns, then the assessment is erroneous, and must be set aside to the extent of the sum assessed upon the land not owned by him. The judge declined so to instruct the jury, but instructed them that if the assessment levied was the plaintiff's just proportion of the expense of constructing the sewer, the jury should find for the city, even though the plaintiff's estate had been estimated at a larger number of square feet than it contained.

The jury found that the assessment upon the petitioner's estate was properly laid in the sum assessed; and the petitioner alleged exceptions.

*E. F. Hodges & J. W. Keith*, for the petitioner.

*J. P. Healy & H. W. Putnam*, for the respondent.

GRAY, C. J. There was no evidence that either of the old culverts was laid out as a sewer, or that the petitioner drained, or had any right to drain, from his estate into it. The existence of those culverts, therefore, could not affect the question whether his estate was benefited by the new sewer.

An overestimate of the number of square feet in the petitioner's estate certainly did not make the assessment invalid, if that estate was assessed no more than its just proportion of the expense of constructing the sewer.

The jury, under the instructions of the court, have found that the petitioner's estate was benefited by the sewer; and that the amount assessed upon it was a just proportion of the whole expense of the construction of the sewer. Upon the appeal of the petitioner, they had no authority to consider the relative benefit to other estates. The rulings and instructions at the trial were sufficiently favorable to the petitioner. Gen. Sts. *c.* 48, §§ 4–6. St. 1869, *c.* 111. *Springfield* v. *Gay*, 12 Allen. 612. *Workman* v. *Worcester*, 118 Mass. 168.          *Exceptions overruled.*