JOHN S. BRAYTON & others, petitioners, *vs.* CITY OF FALL·
RIVER & others.

Nantucket. Oct. 25, 1877. — Feb. 5, 1878. LORD & SOULE, JJ., absent.

An award of commissioners, appointed by this court under a statute, to determine
the amount to be paid by a county towards the construction of a bridge, and to
apportion the amount thus paid between the county and the cities and towns
therein specially benefited, must be returned into court, although the statute does
not in terms require such return.

The St. of 1872, *c.* 295, authorizing a railroad corporation to build, across a river, a
bridge adapted to both highway and railway travel, upon a plan to be approved by
the railroad commissioners, and directing that a certain proportion of the cost of
the same shall be paid by the county in which it is situated, such proportion to
be apportioned, by commissioners to be appointed by this court, between the county
and the cities and towns specially benefited, is constitutional.

PETITION of eleven citizens of the county of Bristol, praying
for the appointment of commissioners under the St. of 1872,
*c.* 295, § 1, authorizing the Old Colony and Newport Railway
Company to construct a highway and railway bridge over Taun-
ton Great River.

Commissioners were appointed, who heard the parties, and
made an award, in which they determined that the sum of
$76,361.20, being one fourth part of the equitable cost of the
bridge, should be paid to the railroad company; and decreed
that the city of Fall River and the towns of Somerset and Swan-
sea were specially benefited, and that they and the county of
Bristol should pay this amount in certain proportions.

The report of the commissioners was addressed to this court,
and filed in the clerk's office. The petitioners, on behalf of the
county commissioners of the county of Bristol, moved that the
award be accepted. The city of Fall River and the towns of
Somerset and Swansea objected to the acceptance of the award
on the grounds that the St. of 1872, *c.* 295, made no provision
for the return of the award to any court, and that so much of it
as authorized the railroad company to build the bridge, and di-
rected one fourth part of the expense thereof to be apportioned
between the county of Bristol and such cities and towns as were
specially benefited, was unconstitional and void.

Hearing before *Lord,* J., who reserved the case for the consid-
eration of the full court.

*E. H. Bennett*, (*H. J. Fuller* with him,) for the petitioners.

*M. Reed*, for the city of Fall River.

*J. M. Morton, Jr.*, for the town of Somerset.

*J. Brown*, for the town of Swansea.

COLT, J.   The city of Fall River, 'and the towns of Somerset and Swansea, object to the acceptance of an award made by commissioners appointed by this court to apportion and assess upon the county of Bristol, and the cities and towns therein, a part of the cost of a bridge constructed for both highway and railway purposes, across Taunton Great River, by the Old Colony and Newport Railway Company, according to a plan approved by the railroad commissioners, and under the provisions of the St. of 1872, *c.* 295.

There is no express requirement in the statute that the doings of the commissioners shall be returned into court.   But it results from necessary implication, arising out of the nature of the duties which are to be performed, that such return should be. made, in order that the doings of the commissioners may be confirmed, when no sufficient cause is shown to the contrary.   *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353.

The act in question gives to the railroad corporation the right to build a bridge, adapted for both kinds of travel, upon a plan to be approved by the railroad commissioners, and with a draw approved by the harbor commissioners, and directs that one fourth of the " equitable cost " of the same be paid by the county to the corporation, and that, on the completion of the bridge, that portion thereof adapted to highway purposes shall thereupon become a public highway.

The objection that this act is unconstitutional cannot be sustained.   From the earliest times, laws have been passed providing for the construction, support and maintenance of public roads and bridges, and for the distribution of the expense and burden of the same upon the cities and towns benefited.   It is said that such laws are authorized by those clauses of the Constitution which give to the Legislature the right to impose taxes, and the power to enact such wholesome and reasonable laws as they shall judge to be for the good and welfare of the Commonwealth.   The manner in which this power shall be exercised, and the means and instrumentalities to be employed, are largely

within the discretion of the Legislature. It belongs exclusively to that body to determine whether the benefit to be secured in any given case is sufficient to warrant the cost, and this is not a question for the court. The Legislature may itself determine in the first instance the question of public necessity and convenience, or may leave it to the adjudication of designated officers and tribunals. The power is most commonly and extensively exercised in the mode prescribed by general laws, administered by established tribunals or boards of public officers; but in many cases the end is accomplished by special legislation, with or without the aid of commissioners. In all cases, however, the work of actual construction has been committed to private citizens, or to corporate bodies, public or private; the power to exercise the right of eminent domain may even be so delegated. *Dorgan* v. *Boston,* 12 Allen, 223. *Hingham & Quincy Bridge* v. *Norfolk,* cited above. *Salem Turnpike* v. *Essex,* 100 Mass. 282. *Haverhill Bridge Proprietors* v. *County Commissioners,* 103 Mass. 120. *Eastern Railroad* v. *Boston & Maine Railroad,* 111 Mass. 125. *Northampton Bridge Case,* 116 Mass. 442.

The strength of the respondents' objection is, not that the Legislature compels the county, cities and towns to build a bridge over Taunton River, but that it compels them to pay a part of the cost by way of contribution to a railroad corporation for building the same. This is indeed an unusual mode of proceeding in such cases; but to employ a railroad corporation to build a public highway or bridge is no more objectionable than to employ any other corporation or any private person to do the same thing. The arguments of the learned counsel for the respondents are addressed to the expediency rather than to the constitutionality of the act. There can be no invasion of constitutional rights, if the means employed in the exercise of the granted power are reasonable, and the cost and burden assumed are distributed in such manner as to be reasonable and proportional. The proceedings under this act are no more to be condemned on principle than those which are so frequently had under laws authorizing bridges already built to be converted into public highways, with an apportionment by commissioners, of the expense incurred, upon the counties and towns benefited. The structure contemplated by the act is required to be prepared

for two different modes of travel, upon a plan approved by an impartial board of commissioners. It must be presumed that the Legislature intended to adjudge that the specified one fourth part of the equitable cost would fairly represent the value of the bridge to the public for highway travel only.

We cannot say that, in any respect, this act transcends the limit within which legislative power in this direction may be exercised.                                   *Award accepted.*