HOSEA KINGMAN & others, petitioners.

Suffolk.    March 26, 27, 1891. — May 19, 1891.

Present: FIELD, C. J., C. ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Metropolitan Sewerage Act — Constitutional Law.*

It is within the constitutional power of the Legislature to appropriate money from the treasury of the Commonwealth towards paying the cost of providing a system for the disposal of sewage, embracing in its benefits a number of cities and towns and a large population.

The Legislature may also provide that the whole or a portion of the cost of such system of sewerage shall ultimately be borne by the cities and towns which will be able to avail themselves of such system, and that the money to pay the cost thereof shall be advanced in the first instance from the treasury of the Commonwealth, and be repaid by such cities and towns.

It is no objection to a statute providing for such advancement of money from the treasury of the Commonwealth, and for a reimbursement thereof by the cities and towns, that the latter will have no ownership in the property of the sewers and works which they are required to pay for, and no right to use the same except under rules prescribed by the Legislature.

In order to determine the proportion which each city and town which is able to use the system of sewerage shall contribute towards the cost and expense thereof, it is within the constitutional power of the Legislature to provide that this court shall appoint three commissioners, who shall, after due notice and hearing, and in such manner as they shall deem just and equitable, determine the proportion in which each city and town shall annually pay money into the treasury of the Commonwealth for the term of five years; their award to be returned into court, and to be binding for five years when accepted by the court; and it is not necessary to require that the sums so to be paid shall be in proportion to the benefits received.

The cities and towns may be required to make such payments before the completion of the work.

The facts that one of the towns included under the act has no local sewers except a main drain, and that another town so included already has an established and satisfactory system of local sewers discharging into the ocean, do not affect the constitutionality of the statute, but relate properly to the amount to be assessed upon those towns.

PETITION under the St. of 1889, c. 439,* by the Metropolitan Sewerage Commissioners, applying for the appointment of the

---

* This act, entitled "An Act to provide for the building, maintenance, and operation of a system of sewage disposal for the Mystic and Charles River valleys," was approved on June 7, 1889.

Sections 1 and 2 of the act provide for the appointment, organization, etc. of a board to be known as the Metropolitan Sewerage Commissioners.

commissioners provided for in § 13 of the act, to determine the proportion in which each of the cities and towns included under the act should bear the expense of the system of sewers contemplated.     Answers were filed by the cities of Somerville and Newton, and the towns of Melrose, Brookline, and Watertown, alleging that the act was unconstitutional, for the following reasons : because of the power given therein to commissioners to apportion the assessments and taxes to be levied on the several

---

Section 3 provides: " Said board shall construct, maintain, and operate for the cities of Boston, Cambridge, Somerville, Malden, Chelsea, Woburn, and the towns of Stoneham, Melrose, Winchester, Arlington, Belmont, Medford, Everett, and Winthrop, such main sewers and other works as shall be required for a system of sewage disposal for said cities and towns, and for the cities of Boston, Waltham, and Newton, and the towns of Watertown and Brookline another such system, both of which systems shall be in substantial accordance with the plans reported and recommended by the State Board of Health in its report to the Legislature of eighteen hundred and eighty-nine; and for that purpose may make all contracts necessary for the construction of the sewers and works aforesaid, or may where deemed advisable carry on such construction by day labor.     Said board may from time to time contract with any other city or town for the extension thereto of either of said systems of sewage disposal, and for the reception and disposal of sewage therefrom."

Section 4 provides for the taking by the board, by purchase or otherwise, of lands, watercourses, rights of way, or easements, and for the taking or entering of existing sewers or parts of sewers, such as may be necessary for the carrying out of the provisions of the act, and for the payment of damages by the Commonwealth, which in case of disagreements are to be assessed as " damages are determined in the case of persons dissatisfied with the estimate of damages sustained by the laying out of ways in the city of Boston."

Sections 5, 6, and 7 provide for the carrying of any sewer under or over a watercourse, way, or railroad, for restoring any way dug up by the board to as good order as before, any damages suffered by a city or town to be repaid it by the Commonwealth, and for the alteration of the direction of any watercourse or of the location or grade of any way.

Section 8 provides that the board shall keep full and accurate accounts, and include an abstract of the same in its annual report to the Legislature.

Section 9 provides for connecting local sewers or private drains with any main sewer constructed under the act.

Section 10 provides for the punishment of any one maliciously injuring or destroying any property held by the board.

The concluding sections are as follows :

" Section 11.  The State Board of Health shall, on the organization of the board created by this act, transfer and deliver over to said board all books, plans, maps, engineers' reports, instruments, and other property acquired during the surveys and investigations relating to the systems of sewage dis-

municipalities named in the act for the payment of the debt and expenses incurred in building the sewers and works provided for in the act; because the act authorizes taxes and assessments on the municipalities included therein, to pay the debt of the Commonwealth, which are not levied proportionally upon all the inhabitants and estates within the Commonwealth; because no provision is made for securing to the municipalities a right of trial by jury as to the taxes or assessments. The town of Stoneham objected to the constitutionality of the act, so far as it required the town to bear a part of the expense of the im-

---

posal for the Mystic and Charles River valleys on which the report of the said board of health, hereinbefore referred to, was founded.

"Section 12. To meet the expenses incurred under the provisions of this act, the Treasurer and Receiver General shall, with the approval of the Governor and Council, issue from time to time scrip or certificates of debt in the name and behalf of the Commonwealth, and under its seal, to an amount not exceeding five million dollars, for a term not exceeding forty years. Said scrip or certificates of debt shall be issued as registered bonds, or with interest coupons attached, and shall bear interest not exceeding four per cent per annum, payable semiannually on the first days of March and September in each year. Such scrip or certificates of debt shall be designated on the face as the Metropolitan Sewerage Loan; shall be countersigned by the Governor, and shall be deemed a pledge of the faith and credit of the Commonwealth, redeemable at the time specified therein in the lawful money of the United States, and shall be sold and disposed of at public auction, or in such other mode, and at such times and prices, and in such amounts and at such rate of interest not exceeding four per centum per annum, as the Governor and Council shall deem for the best interest of the State. The Treasurer and Receiver General shall on issuing any of said scrip or certificates of debt establish a sinking fund, and apportion thereto from year to year an amount sufficient with its accumulations to extinguish the debt at maturity. But in such apportionment of a sinking fund the assessment shall be at the rate of one eightieth part of the whole amount in each of the first ten years, one sixtieth part in each of the second ten years, one thirtieth part in each of the third ten years, and the remainder equally divided in the next ten years. Any premium realized in the sale of said scrip or certificates of debt shall be applied to the payment of the interest on said loan as it accrues.

"Section 13. The Supreme Judicial Court sitting in equity shall, on the application of said board, after notice to each of the cities and towns hereinbefore named, appoint three commissioners, who shall not be residents of any of the cities or towns mentioned in this act, who shall after due notice and hearing, and in such manner as they shall deem just and equitable, determine for each system the proportion in which each of the cities and towns hereinbefore named shall annually pay money into the treasury of the Com-

provement, on the ground that it had no local system of sewers by means of which it could connect with the main system provided for by the act; while the town of Winthrop objected because it was already supplied with a sufficient system of sewers emptying into the ocean. The cities of Boston and Cambridge joined with the petitioners; and the other cities and towns named in the act submitted the determination of their rights to the court.

The case was heard by *W. Allen*, J., who found that the petitioners had already entered into contracts to the amount

---

monwealth for the term of five years next following the year of the first issue of said scrip or certificates, to meet the interest and sinking fund requirements for each of said years as estimated by said Treasurer, and to meet the cost of maintenance and operation of said system for each of said years, as estimated by the said board and certified to said Treasurer, and any deficiency in the amount previously paid in, as found by said Treasurer, and shall return their award into said court; and when said award shall have been accepted by said court the same shall be a final and conclusive adjudication of all matters herein referred to said commissioners, and shall be binding on all parties.

" Section 14. Before the expiration of said term of five years and every five years thereafter other commissioners, who shall not be residents of any of the cities or towns mentioned in this act, shall be appointed as aforesaid, who shall in such manner as they deem just and equitable determine the proportion in which each of said cities and towns in each of said systems shall annually pay money into the treasury of the Commonwealth as aforesaid for the next succeeding term of five years, and shall return their award into said court; and when said award shall have been accepted by said court, the same shall be a final and conclusive adjudication of all matters herein referred to said commissioners, and shall be binding on all parties.

" Section 15. The amount of money required each year from each such city and town to meet the interest, sinking fund requirements, and cost aforesaid for that system in which it is included for each year, and deficiency, if any, shall be estimated by said Treasurer in accordance with the proportion determined as aforesaid, and shall be included in and made a part of the sum charged to such city or town, and be assessed upon it in the apportionment and assessment of its annual State tax, and said Treasurer shall in each year notify each such city and town of the amount of such assessment, which amount shall be paid by the city or town into the treasury of the Commonwealth at the time required for the payment and as a part of its State tax.

" Section 16. The Supreme Judicial Court shall have jurisdiction in equity to enforce the provisions of this act, and shall fix and determine the compensation of all commissioners appointed by said court under the provisions hereof."

of $1,418,000, for the construction of the system, and had actually expended about $500,000; and that, prior to the filing of the petition, the Treasurer of the Commonwealth had issued and sold scrip under § 12 of the act to the amount of $3,350,000, and reported the case for the consideration of the full court.

*S. Z. Bowman,* for the city of Somerville.

*S. J. Elder,* for the town of Winchester.

*G. E. Smith,* for the town of Everett.

*W. B. Stevens,* for the town of Stoneham.

*J. O. Teele,* for the town of Winthrop.

*J. F. Wheeler,* for the town of Watertown.

*F. E. Fitz,* for the city of Chelsea.

*A. E. Pillsbury,* Attorney General, *& W. D. Turner,* for the petitioners.

C. ALLEN, J. The constitutionality of the St. of 1889, c. 439, is attacked by the different respondents on several grounds.

The first objection is, that the object in view, which is to provide for the disposal of sewage from a number of cities and towns, is not of such a character that the Legislature can properly appropriate money in furtherance of it from the treasury of the Commonwealth. It is admitted that public money of the Commonwealth may properly be expended in aid of the construction of roads, bridges, canals, and railroads, to increase facilities for communication, and this has occasionally been done, from early times. By the Prov. St. of 1693–94, c. 22, 1 Prov. Laws, (State ed.) 158, a grant of £150 from the treasury of the Province was made towards rebuilding and repairing the bridge over Charles River; and by the Prov. St. of 1699–1700, c. 11, 1 Prov. Laws, (State ed.) 383, a grant of £153 was made for the same purpose. In recent years, the statutes granting State aid to railroads are freshly in mind; for example, to the Western, St. 1836, c. 131; to the Troy and Greenfield, St. 1854, c. 226; to the Boston, Hartford, and Erie, St. 1866, c. 142; to the Williamsburg and North Adams, St. 1867, c. 321; and to the Lee and New Haven, St. 1868, c. 313. It is contended, however, that a statute for providing a system for the disposal of sewage does not fall within the same reason, and cannot be considered as providing for an object of general public utility, but that the benefits to be derived from it are essentially local in

their operation, and do not in any sense include the whole people, and therefore that the public money of the Commonwealth ought not to be expended for it.

Assuming that the respondents may so far represent the general public as to be entitled to raise this question, it is plain that the objection can hardly be considered as of great weight, since the decision in *Talbot* v. *Hudson*, 16 Gray, 417. It was there held, on the greatest consideration, that the Legislature might provide for the removal of a dam, by means of which a large tract of land situated in different towns, and owned by a large number of persons, was overflowed, and might provide for compensation out of the treasury of the Commonwealth to persons whose property was thereby injured; the court saying, at page 425, " It has never been deemed essential that the entire community or any considerable portion of it should directly enjoy or participate in an improvement or enterprise in order to constitute a public use, within the true meaning of these words as used in the Constitution." The improvement which the statute of 1889 is designed to effect stands far stronger, as an object of general public utility, than that which was the subject of consideration in *Talbot* v. *Hudson*. It has for its purpose to promote the public health, to avert disease, and to prevent nuisances. The territory to be benefited according to the Report of the State Board of Health, to which we are referred, includes an area of one hundred and thirty square miles, and contains one sixth of the population of the State. The Legislature has declared that a system of sewerage to accommodate this territory and this portion of the people of the State is an object of public utility, such as warrants the expenditure or the advancement for the time being of money from the treasury of the Commonwealth. It is impossible for us to say to the contrary. The argument is made to us, that, if such an expenditure of public money is warranted, the Legislature might authorize an appropriation for the benefit of a single town, and construct and maintain forever a local improvement for such town. But in determining the power of the Legislature in a case like this, little assistance is obtained by imagining extreme instances of possible abuse of the power. *Norwich* v. *County Commissioners*, 13 Pick. 60, 62. Nor need we undertake to define how far the

Legislature might properly go, in a special emergency, in giving direct assistance to a particular town. Those curious in prosecuting such an inquiry may find examples of what has been done in the past in the St. of 1874, c. 325, providing for the payment of one hundred thousand dollars towards the expenses of rebuilding roads and bridges in the town of Williamsburg, which had been destroyed by a flood; and in earlier times, in the grants to Boston of £600 in 1752 for the relief of the poor, on account of the small-pox, and of £1100 in 1760, on account of losses by fire. Prov. St. 1751-52, c. 19, 3 Prov. Laws, (State ed.) 606. Prov. St. 1760-61, c. 35, 4 Prov. Laws, (State ed.) 440. See also *Moore* v. *Sanford*, 151 Mass. 285; *Lowell* v. *Oliver*, 8 Allen, 247, 255. It is enough for us to say that no valid objection lies to the St. of 1889 on this ground.

It is further objected, that if the object contemplated by the statute is one of such general public utility that the public money of the Commonwealth may properly be expended or advanced for it, then the expense ought to be borne by the Commonwealth, and cannot properly be assessed upon certain particular cities and towns. But this objection rests upon too narrow a view of the powers of the Legislature, in respect to the proper distribution of the public burdens. The provision of the Constitution conferring these powers is as follows: " Full power and authority are hereby given and granted to the said General Court, from time to time to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, either with penalties or without; so as the same be not repugnant or contrary to this · Constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same." Const. Mass., c. 1, § 1, art. 4. It was said in *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353, 358: " Among the purposes for which it [this power] is to be exerted none is more essential than a wise and careful distribution of certain public burdens or duties. Of these, a leading one is the construction, support, and maintenance of roads and bridges." The construction and support of a system for the disposal of sewage, like that provided for by the St. of 1889, fall within the same reason. *Dingley* v. *Boston*, 100 Mass. 544, 557.

And in reference to these and other like burdens, it may be said in general, that it is within the proper province of the Legislature to determine where they shall rest, either in the first instance or finally. The Legislature may properly determine that the whole or a part of the cost shall be borne by the Commonwealth, or it may impose it wholly upon· counties, or wholly upon towns, or a part upon each. And in doing so it is not necessarily limited by county or town lines. Indeed, as has often been declared, the Legislature may change county or town lines at will, and may provide how their respective properties and debts shall be shared and adjusted. *Opinion of Justices*, 6 Cush. 578. *Stone* v. *Charlestown*, 114 Mass. 214. *Coolidge* v. *Brookline*, 114 Mass. 592. *Weymouth & Braintree Fire District* v. *County Commissioners*, 108 Mass. 142. *Commonwealth* v. *Plaisted*, 148 Mass. 375, 386. Instead of changing lines, the Legislature may apportion the burdens in such a manner as will tend to secure fairness and equality. Absolute equality in the distribution of burdens of course is not to be hoped ·for. But with a view to the nearest approach to it that is possible, the Constitution wisely vests a large and general power in the Legislature. And if at any time it is found, either from a change of circumstances or otherwise, that the burden presses too hardly upon a particular town or county, the Legislature may change it. Nor does the fact that the money has been advanced in the first instance from the treasury of the Commonwealth prevent the Legislature from providing for a reimbursement from counties, cities, or towns. It may often be more convenient, and is conspicuously so in the case before us, to have the money thus advanced in the first instance, and afterwards apportioned upon those cities and towns which are finally to pay it, and this course has sometimes been followed in requiring a county to pay in the first instance from the county treasury for an improvement, the cost of which was ultimately to be borne, wholly or in part, by towns. In such cases, it is virtually a lending of money, like the grants of State aid to railroads.

The statutes and decisions which illustrate and establish the validity of such a distribution of the burden of local improvements are too numerous to be described separately; but examples may be cited. In some instances, a fixed sum or a definite

prescribed proportion of the cost, and of the expense of the future maintenance, has been imposed upon the general public treasury, and upon counties and towns; or merely upon counties and towns. Prov. Sts. 1693–94, c. 5, 1 Prov. Laws, (State ed.) 135; 1693–94, c. 22, 1 Prov. Laws, (State ed.) 158; 1699–1700, c. 11, 1 Prov. Laws, (State ed.) 383. Resolve of June 13, 1700, 1 Prov. Laws, (State ed.) 419. Sts. 1795, Feb. 10, 2 Mass. Spec. Laws, 8; 1831, c. 41, considered in *Norwich* v. *County Commissioners*, 13 Pick. 60; 1860, c. 140; 1876, c. 51. In some instances, the whole burden has been put upon counties. Prov. St. 1770–71, c. 31, 5 Prov. Laws, (State ed.) 133. Sts. 1793, March 15, 1 Mass. Spec. Laws, 421; 1835, c. 33. In some, the burden has been upon the county in the first instance, with a provision for reimbursement. Sts. 1782, May 7, 1 Mass. Spec. Laws, 27; 1875, c. 193. In some instances, it has been put solely upon cities or towns, either one or more. Prov. Sts. 1699–1700, c. 25, 1 Prov. Laws, (State ed.) 405; 1736–37, c. 5, 2 Prov. Laws, (State ed.) 795. Sts. 1832, c. 116; 1840, c. 52; 1854, c. 283; 1862, c. 65; 1868, c. 294; 1874, c. 139, c. 240, § 8, c. 259; 1880, c. 159. In some instances, counties and towns have been required or authorized to contribute for improvements beyond their own borders. Sts. 1838, c. 169; 1850, c. 215; 1870, c. 231; 1871, c. 275. *Commonwealth* v. *Newburyport*, 103 Mass. 129. *Carter* v. *Cambridge & Brookline Bridge*, 104 Mass. 236. In some instances, changes have been made by later statutes, varying the burden. St. 1860, c. 95, considered in *Attorney General* v. *Cambridge*, 16 Gray, 247. St. 1870, c. 265, considered in *Scituate* v. *Weymouth*, 108 Mass. 128. St. 1880, c. 236, considered in *Agawam* v. *Hampden*, 130 Mass. 528. See also *Cambridge* v. *Lexington*, 17 Pick. 222; *Boston Seamen's Friend Society* v. *Boston*, 116 Mass. 181.

It is urged by the respondents as an objection to the view taken above, that the various cities and towns are to have no ownership in the property of the sewers and works which they are required to pay for, and no right to use the same except under rules prescribed by the Legislature. No express authority is cited in support of this objection, and we see no valid ground upon which it can rest. A town is required by law to build highways, and to keep them in repair, but it has no separate ownership nor exclusive use of them. The highway sur-

veyors, through whose agency the roads are kept in repair, are held to be public officers, and not agents of the town. *Walcott* v. *Swampscott*, 1 Allen, 101. `Barney` v. *Lowell*, 98 Mass. 570. No doubt the Legislature might provide for the appointment of public road masters entirely independently of the towns, and still require the towns to pay the expenses of keeping the roads in repair. It is indeed in one respect more beneficial to the cities and towns not to have the ownership or care of the sewers, because otherwise they might be held responsible for negligence in the care of them. *Child* v. *Boston*, 4 Allen, 41. The supposition is not to be entertained that the Commonwealth will shut off any one of the cities and towns, which are required to contribute, from the use of the sewers under reasonable rules and regulations. From the extent of the system of sewerage, and the number of towns involved, harmonious and effective management may well have been thought to be best secured through officers of the State. It cannot for a moment be supposed that the Legislature would consciously do injustice to a particular city or town. There is no valid ground or reason on which the Legislature is bound to vest in a city or town the technical title to the works which constitute a public improvement to which the city or town has been required to contribute. *Stone* v. *Charlestown*, 114 Mass. 214, 223, 224.

The respondents further contend that the St. of 1889 is unconstitutional, because no standard or rule is prescribed for the commissioners who are to determine the proportions to be paid by the several cities and towns, according to which they shall fix the same. That is to say, the respondents object that the act is invalid, because it does not provide that the assessment shall be made upon the different cities and towns according to the benefits received by each, or according to any other prescribed standard.

The provision of the statute is, that this court shall appoint three commissioners, who shall, after due notice and hearing, and in such manner as they shall deem just and equitable, determine the proportion in which each of the cities and towns named therein shall annually pay money into the treasury of the Commonwealth for the term of five years, and shall return their award into said court; and when said award shall have

been accepted by said court, the same shall be a final and conclusive adjudication, &c. Before the expiration of the five years, a new board of commissioners is to be appointed, to make a similar award for the next five years.

It is not contended in distinct terms, and at this day it could not be successfully maintained, as a bald proposition, that the Legislature cannot delegate to commissioners, to be appointed by this court, the determination of the proportions of expense which each county, city, or town should be required to pay for a local improvement. There has been, indeed, a long continued course of practice from very early times, shown by numerous statutes and sanctioned by many decisions, in which such authority has been delegated. Sometimes this power has been intrusted to the county commissioners. Sts. 1834, c. 15; 1835, c. 56; 1841, c. 103; 1850, c. 215; 1854, c. 283; 1863, c. 88; 1864, c. 188; 1866, c. 265; 1867, c. 296; 1868, c. 80; 1868, c. 309, § 8, considered in *Haverhill Bridge* v. *County Commissioners*, 103 Mass. 120; 1869, cc. 266, 378; 1870, c. 219; 1871, cc. 38, 199; 1872, c. 129; 1874, cc. 265, 289, 325; 1875, c. 193. Sometimes to the court of quarter sessions, or to some other court. Prov. Sts. 1716–17, c. 5, 2 Prov. Laws, (State ed.) 44; 1759–60, c. 21, 4 Prov. Laws, (State ed.) 285; 1764–65, c. 23, 4 Prov. Laws, (State ed.) 740; 1768, c. 12, 4 Prov. Laws, (State ed.) 1023. St. 1782, May 7, 1 Mass. Spec. Laws, 27. Sometimes to the city council, or to the mayor and aldermen of a city. St. 1863, c. 107, considered in *Springfield* v. *Gay*, 12 Allen, 612. St. 1863, c. 191, considered in *Howe* v. *Cambridge*, 114 Mass. 388. In one statute, at least, to the board of railroad commissioners. St. 1869, c. 408, § 5, considered in *New London Northern Railroad* v. *Boston & Albany Railroad*, 102 Mass. 386. Sometimes to commissioners to be specially appointed by the Governor and Council. Prov. St. 1702, c. 11, 1 Prov. Laws, (State ed.) 506. St. 1870, c. 265, considered in *Scituate* v. *Weymouth*, 108 Mass. 128. And sometimes to commissioners to be appointed by this or some other court. Sts. 1820, c. 59; 1862, c. 177, considered in *Hingham & Quincy Bridge* v. *County Commissioners*, 6 Allen, 353; 1868, c. 309, considered in *Salem Turnpike* v. *Essex*, 100 Mass. 282; 1868, c. 322, and 1869, c. 272, considered in *Dow* v. *Wakefield*, 103 Mass. 267; 1869,

cc. 142, 244, 273; 1869, c. 161, considered in *Carter* v. *Cambridge & Brookline Bridge*, 104 Mass. 236; 1870, cc. 182, 237, 302, 303; 1871, c. 177, considered in *Northampton Bridge case*, 116 Mass. 442; 1872, c. 295, considered in *Brayton* v. *Fall River*, 124 Mass. 95; 1872, cc. 130, 131; 1873, c. 200, and 1880, c. 236, considered in *Agawam* v. *Hampden*, 130 Mass. 528; 1875, c. 175; and 1875, c. 200, considered in *County Commissioners, petitioners*, 140 Mass. 181, and 143 Mass. 424.

This ample, but by no means exhaustive, citation of precedents has been made for the purpose of showing how thoroughly the method has been adopted in Massachusetts of apportioning the cost of local improvements by delegated authority.

Assuming, therefore, that this method is within the proper scope of legislative power, it remains to inquire, in the case of a public improvement like that now under consideration, where the Legislature itself has designated the cities and towns upon which the burden is to rest, how far the Legislature must go in prescribing a rule or standard for making such apportionment upon and among the cities and towns so designated; or, to be more precise, whether a statute providing that the determination shall be made in such manner as the commissioners shall deem just and equitable, and subject to acceptance by this court, must be held to be insufficient and invalid.

In approaching this question, it is well to bear in mind the peculiar character of the public improvement which is provided for in the statute. In nearly all of the statutes allowing or requiring assessments, either upon property, persons, or municipal corporations, for local improvements, the object primarily in view has been the benefit to land. Even in such cases, legislatures and courts have not usually found it expedient to lay down any definite rule according to which the assessment or apportionment of the cost should be made; but in a case like the present peculiar difficulties arise, growing out of the nature of the improvement and of the objects sought to be accomplished. No doubt the Legislature might have dealt with the matter directly, and itself have fixed the proportion of the cost which each city or town should pay, and might change this proportion from time to time. No valid ground of complaint would be open to any city or town, if this course had been pursued. But

apparently it was thought by the Legislature that it was expedient to have a more careful and detailed consideration of the various elements which ought to enter into the determination of the question, with the aid of arguments, and with more deliberation than it is practicable for the Legislature itself to give. But whether the apportionment of cost is to be made by the Legislature, or by some tribunal or commission specially authorized, it is difficult to see how anything like an exact rule or standard of apportionment can be fixed. In an action at law to recover damages for an actual sickness or injury to person or reputation from the tort of an individual or of a corporation, it can only be said that the damages should be such as will be compensatory, but there is no rule except the estimation by a jury of the loss which the plaintiff has suffered, and this must necessarily depend somewhat upon the feelings or temperament of the jurors. But in a case like this which is now before us, that which is to be paid for by the cities and towns is the probability of better health and greater personal comfort for the people at large from the carrying out of the proposed improvement. It is very plain that there is, and in the nature of the case can be, no means of an accurate measurement, no matter what tribunal has to deal with the subject. All that could be done by any tribunal would be to take into view all the various elements and considerations that might appear to have a just bearing upon the question, and determine as fairly as possible what is just and equitable under all the circumstances. Absolute accuracy or equality being out of the question as impracticable, shall it be declared that the Legislature must lay down some artificial rule for the guidance of the commissioners, when it is plain that no artificial rule can define or include all the elements which it might be proper to consider? When the rule is laid down that an assessment shall be made in proportion to the benefits received, this usually has reference to a benefit to property, which is appreciable, and may to some extent be ascertained by inquiring as to the value of property in the market. A town may no doubt in a certain sense be said to be benefited by anything which improves the health or comfort of its inhabitants, and indirectly the value of property may also be increased. But if, as will presently be shown by a reference to decided cases, such a rule is not neces-

sarily to be applied in cases where the improvement is chiefly for the advantage of property, by a still stronger reason it must be deemed insufficient and unsuitable in a case like the present. Where a great public work of establishing an extensive system of sewerage is entered upon, for the use of many different cities and towns, there are many elements which ought to be taken into consideration in apportioning the cost; for instance, the exigency or special need of such an improvement in particular localities, the area which can be accommodated, the present or probable population or wealth of the different cities and towns, the value of the land and its adaptability for homes, factories, or other places of business, and other elements which cannot be fully enumerated in advance. It cannot be laid down as a rule, that in the distribution and apportionment of this public burden it is necessary to aim at exact equality or proportion, according to any rule or standard which is to be laid down and defined beforehand. The apportionment should be just and equitable, under all the circumstances which may be found to exist. In the determination, there must necessarily be a large discretion as to the weight which is to be given to particular considerations. It should not, however, be understood that the discretion is wholly arbitrary. It is limited and defined by the requirement that the proportion shall be determined in such manner as the commissioners shall deem just and equitable; and this discretion is to be exercised under the supervision and subject to the sanction of this court. No doubt an award which should be found to be extravagant and unreasonable would be rejected. The commissioners are made, in a sense, officers of the court. The provision that their award shall take effect only when it shall have been accepted by the court implies a right of the parties to be heard upon the question of acceptance. Even without an express provision to that effect, it has been held repeatedly that, when commissioners are appointed by this court, their award must be returned into court for acceptance. *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353. *Brayton* v. *Fall River*, 124 Mass. 95. *Wyman* v. *Eastern Railroad*, 128 Mass. 346. It is therefore to be assumed that in the exercise of the discretion confided to the commissioners no rule of law or equity will be violated, and that the cities and towns will have all the

protection to which they are entitled. It is conceded in the argument that they are not entitled, as a matter of constitutional right, to appeal to a jury; as indeed individuals are not, in similar cases. *Sunderland Bridge case*, 122 Mass. 459. *Northampton Bridge case*, 116 Mass. 442. *Howe* v. *Cambridge*, 114 Mass. 388. In other respects relating to the obligations imposed upon them, their rights are not the same as the rights of individuals and of other corporations. *Agawam* v. *Hampden*, 130 Mass. 528, 530, and cases cited. It is not necessary at present to go into this question further than to hold that, in order to ascertain the proper proportions to be paid by several different cities and towns for a public improvement, consisting of an extensive system of sewerage available to be used by them all, the Legislature, if it sees fit to do so, may properly provide that this court shall appoint disinterested commissioners, who, after due notice and a hearing, shall determine such proportions in such manner as they shall deem just and equitable, and return their award into court; and that when accepted by the court the award shall be binding. Even after the acceptance by this court of such an award, the Legislature, if it does not like it, may still provide by new legislation for a new scheme for the future distribution of the burden. *Scituate* v. *Weymouth*, 108 Mass. 128. *Agawam* v. *Hampden*, 130 Mass. 528. The final authority still rests with the Legislature, and no doubt, if it saw fit to do so, it might itself appoint the commissioners, with directions to make their report directly to the Legislature.

This conclusion is well supported by the practice which has prevailed, and the course of judicial decisions, in this Commonwealth. As already observed, these have chiefly related to improvements designed primarily to increase the value of land, and not adopted with special view to the health of the people. In a few instances the benefit to property has been prescribed as the basis of assessment. Examples of this are found in the Prov. St. of 1702, c. 11, 1 Prov. Laws, (State ed.) 506; and in the St. of 1869, c. 142.

More often, however, the assessment is to be laid upon persons, estates, cities, or towns which are found to be benefited, without any rule being prescribed that the assessments shall be in proportion to the benefits. In such cases, the selection of the

cities and towns by the court or commissioners is a substitute for the designation by the Legislature itself, and it is often added in the statutes, that upon the cities and towns selected the assessment shall be just and equal, or equitable, or reasonable. Sts. 1820, c. 59; 1862, c. 177; 1863, c. 107; 1868, c. 309, §§ 3, 8; 1868, c. 322; 1869, cc. 161, 244, 266, 273; 1870, cc. 182, 219, 237, 265; 1871, cc. 177, 199; 1872, cc. 129, 130, 131, 295; 1873, c. 200; 1874, c. 289; 1875, cc. 175, 193, 200; 1878, c. 110.

In other instances the statutes have made no reference at all to benefits, but have simply required that the assessments should be in proportion to value, or should be just and equitable, or something like that. Sts. 1863, c. 191; 1865, c. 159; 1867, c. 296; 1870, cc. 302, 303; 1871, c. 38; 1874, c. 265. See also St. 1863, c. 88.

In still other instances, assessments for local improvements have been authorized or directed with no rule or suggestion whatever to show on what principle they should be made. Prov. Sts. 1716–17, c. 5, 2 Prov. Laws, (State ed.) 44; 1764–65, c. 23, 4 Prov. Laws, (State ed.) 740; 1768, c. 12, 4 Prov. Laws, (State ed.) 1023. Sts. 1862, c. 177, the provision as to counties; 1865, c. 88; 1866, c. 265; 1868, c. 80; 1869, c. 378.

By the St. of 1834, c. 15, and the St. of 1835, c. 56, the county commissioners were authorized to lay a portion of the expense upon the county, without other limit than that in one case it was to be not more, and in the other case not less, than one half. In all such cases, it must have been assumed by the Legislature that the determination should be just and equitable or reasonable, and it would probably be no strained construction to hold that such a provision was implied, just as the law implies reasonable time in the construction of contracts where no time is specified.

The omission to prescribe a fixed rule for the assessment of the cost of local improvements has been vindicated in numerous decisions of this court. The case of *Hingham & Quincy Bridge* v. *Norfolk*, 6 Allen, 353, arose under the St. of 1862, c. 177, by which a turnpike and bridges were made a public highway; and commissioners to be appointed by this court were to award the damages, and also, by § 3, "to determine and decree in what proportions said amount shall be paid by the counties

of Norfolk and Plymouth respectively." No rule was given to guide the assessment as to the counties. An award was made that the county of Norfolk should pay three quarters of the amount that was fixed upon as damages; and that county objected to the acceptance of the award, assigning, amongst other grounds, that the Legislature had exceeded its constitutional powers in delegating legislative and judicial powers to the commissioners, and in imposing unequal and unjust burdens upon counties and towns. The argument is not fully reported, but a reference to the original brief shows that it was contended, amongst other things, on behalf of the county, that the statute was unconstitutional because no rule of apportionment was adopted as to the share of the counties; that as to the towns, reference was had to the doctrine of benefits, but in reference to the counties the decision was entirely arbitrary; that the property of the county was subjected to the decree of the commissioners, with no right of appeal; and that the power of determining what counties or towns should bear burdens, or the distribution of benefits, could not be delegated, being reposed in the Legislature. But it was held that the statute was valid, under the clause of the Constitution before cited, authorizing the Legislature to make all manner of wholesome and reasonable laws.

The case of *Dorgan* v. *Boston*, 12 Allen, 223, arose under the St. of 1865, c. 159, providing that the expense of widening a street should be assessed upon the abutting estates in proportion to their value, as they should be appraised by the mayor and aldermen of the city when the improvements had been made. The whole principle of assessing the cost of local improvements upon abutters was attacked in the argument. The court, in the course of the elaborate judgment sustaining the validity of the statute, said, at page 237: " Nor can it be contended that the Constitution, in regard to this species of taxation, furnishes any fixed rules of proportion, or gives any absolute standard by which to determine whether a particular tax is within the limits of the legitimate exercise of the power granted. Undoubtedly a very wide discretion was intended to be left to the Legislature as to the subjects and method of executing the authority conferred on them of imposing taxes for purposes other than those of a general nature; and yet the power is not wholly without limit."

The requirement that taxes should be proportional does not apply to such a case. 12 Allen, 240, 241. See also *Merrick* v. *Amherst*, 12 Allen, 500.

The case of *Springfield* v. *Gay*, 12 Allen, 612, arose under the St. of 1863, c. 107, authorizing the city council of Springfield to construct certain drains, and with the assistance of a competent engineer to determine what portion of the expense should be borne by the city, and what portion by the owners of real estate; the latter portion to be equitably and ratably assessed upon the owners. (§§ 3, 4.) No other rule for the assessment was given. An owner of land objected to the tax assessed upon him. The court, in sustaining its validity, said: "The statute does not require that the assessments imposed on estates to defray the expense of building sewers should be assessed according to the benefits which each estate might receive from their construction. It prescribes no fixed rule or standard by which such assessments should be laid. The only limitation on the power of the assessors is, that they should be equitably and ratably assessed. The rule or basis of the assessment is left entirely to the judgment and discretion of the assessors." (p. 615.) "We can readily see that it would be difficult, if not impracticable, to make an assessment which would operate fairly and equally, based on an estimate of the benefits which each estate might derive from the construction of the sewer. These benefits would necessarily be conjectural and difficult of estimation." (p. 616.)

Without further quotation from the language of decisions, it was also held that the assessment need not be in proportion to the benefits received, in *Workman* v. *Worcester*, 118 Mass. 168, 177; *Keith* v. *Boston*, 120 Mass. 108, 112; and *Snow* v. *Fitchburg*, 136 Mass. 183. Other elements which might be considered are mentioned in *Commonwealth* v. *Newburyport*, 103 Mass. 129, 134; *Boston Seamen's Friend Society* v. *Boston*, 116 Mass. 181, 183; and *Snow* v. *Fitchburg*, *ubi supra*. The power to delegate the determination to commissioners, and the general character of their investigation, are stated in *Salem Turnpike* v. *Essex*, 100 Mass. 282; *Dow* v. *Wakefield*, 103 Mass. 267, 273; *Scituate* v. *Weymouth*, 108 Mass. 128; *Brayton* v. *Fall River*, 124 Mass. 95; and *Agawam* v. *Hampden*, 130 Mass. 528.

The authorities cited by the respondents from Vermont, New Jersey, and Michigan * show that different views of the legislative power prevail in those States. If the question were entirely new, these decisions would be entitled to, and would have, great weight with us; but they are not consistent with the views which we entertain of the powers vested in the Legislature by our own Constitution.

It is further contended that the assessment provided for by the statute cannot be upheld, because it is to be levied and collected before the ascertainment of the cost by the actual completion of the work. But we are at a loss to see how a public work can be carried on unless the means are raised for current expenses before its completion; and there can be "no valid distinction in principle between a right to raise money for a specific object yet to be accomplished, and a right to raise it to defray the expense of the same object after it has been attained." *Lowell* v. *Oliver*, 8 Allen, 247, 257. *Carter* v. *Cambridge & Brookline Bridge*, 104 Mass. 236, 239.

It is urged in behalf of the town of Stoneham, that it has no local sewers except a main drain, and that the system for the disposal of sewage will be of no benefit to the town. The town may, nevertheless, be in need of a system of local sewers, and may have one before the general system provided for by the St. of 1889 is completed. The weight of this objection is not for us, at this stage of the proceedings.

The special considerations urged in behalf of the town of Winthrop, growing out of the fact that it already has an established and satisfactory system of local sewers, discharging into the ocean, are also proper to be laid before the commissioners, but cannot be taken into account by us in the present hearing.

None of the objections taken to the validity of the statute being found to be valid, the petitioners are entitled to maintain their petition for the appointment of commissioners to determine the proportions which the several cities and towns are to pay, as provided in the statute.        *Ordered accordingly.*

---

* These cases were *Barnes* v. *Dyer*, 56 Vt. 469 ; *Tide-water Co.* v. *Coster*, 3 C. E. Green, 518 ; *State* v. *Hudson Commissioners*, 8 Vroom, 12, 19 ; *State* v. *Street Commissioners*, 9 Vroom, 190 ; *People* v. *Detroit*, 28 Mich. 228; and *Thomas* v. *Gain*, 35 Mich. 155.